DIMITRIOS P. BILLER (142730)
LDT Consulting, Inc.
15113 Sunset Blvd.
Pacific Palisades, California 90272
Telephone: (310) 459-9870
E-mail: biller_ldtconsulting@verizon.net


Attorney for Plaintiffs PDTW, LLC
and Paula Thomas

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA (WESTERN DIVISION)

| | |
|---|---|
| PDTW, LLC, AND PAULA THOMAS, <br><br> PLAINTIFFS, <br><br> VS. <br><br> [1] RICHARD PEDDIE, AN INDIVIDUAL; [2] LAW STUDIOS/RICHARD BYRON PEDDIE, A BUSNESS ORGANIZED UNDER THE LAWS OF THE STATE OF COLORADO; [3] STEPHEN CHOI, AKA HILLSHORE INVESTMENT, S.A. [DUMMY CORPORATION]; [4] ENILUZ GONZALEZ, AN INDIVIDUAL; [5] DESNA INVESTMENT, LLC; [6] JAMES ARTIANO; [7] DAVID SCHNIDER, [8] LAW OFFICE OF DAVID SCHNIDER, [9] LAW FIRM IN CALIFORNIA, NOLAN HIEMANN, LAW FIRM IN CALIFORNIA; [10] JENE PARK, AN | Case No.: Case No.: 2:17-cv-04158-JAK-PJW <br><br> **PLAINTIFF PDTW, LLC AND PAULA THOMAS' OPPOSITION TO THE JOINER BY JENE PARK, STEVE PRESTEMON, PALLATIVE, AND THOMAS WYLDE, LLC TO KF PROFESSIONAL GROUP'S *EX PARTE APPLICATION* FOR A PROTECTIVE ORDER OR STAY ON DISCOVERY AND/OR STATUS CONFERENCE; MEMORANDUM OR POINTS & AUTHORITIES IN SUPPORT OF OPPOSITION; DECLARATION OF DIMITRIOS P. BILLER** <br><br> **Date: TBA** <br> **Time: 8:30 a.m.** |

PLAINTIFF PDTW, LLC AND PAULA THOMAS' NOTICE OF MOTION FOR CRIMINAL CONTEMPT - 1

INDIVIDUAL; [11] THE PALLIATIVE, A LIMITED LIABILITY COMPANY; [12] STEVE PRESTEMON; [13] KF PROFESSIONAL; [14] NORMAN KO; [15] JOESPH FOSTER; [16] KYU HONG KIM, CPA, INC. [17] KYU HONG KIM; [18] ALLISON KIM; AN INDIVIDUAL, [19] PETER BALLAS; [20] PETER W. BALLAS & ASSOCIATES, INC.; [21] KRING & CHUNG, INC.; [22] KENNETH CHUNG; [23] ALLYSON THOMPSON; [24] LAURA HESS; [25] LAURA BOOTH; [26] MISTY ISAACSON; [27] PAGTER & PERRY ISAACSON; [28] ROGER KUO; [29] ZTHER INTERACTIVE; [30] IAN CHIN; STANLEY DUCK, LLC; [31] DOUG LEE; [32] DSRB, LLC; [32] ALEX KIM; [33] RICHARD KIM; [34] ERIC CHOI; [35] 317 MBP, LLC [DUMMY COMPANY TO PROTECT CHOI'S ASSETS]; [36] BENJIMEN KIM; [37]; LAUNCHPAD COMMUNICATIONS [38] CONSUMER RESOURCE NETWORK, [39] KHONDKER SHOEB AHMED, [40] ANDREW APFELBERG; [41] GREENBERG GLUSTER; *[42] CHOI ASSOCITE-IN-FACT-ENTERPRISE;* [43] JAY YU; [44] DANNY KIM [45] UNITED PLUS INSURANCE; [46] THOMAS WYLDE, LLC; [47] LAW OFFICE OF RICHARD KIM; DOES 1 - 100

DEFENDANTS.

Place: **Courtroom 10B**

**BEFORE THE HONORABLE DISTRICT COURT JUDGE JOHN A. KRONSTADT**

Plaintiffs hereby file an Opposition to the "Joiner" to KF Professional Group's *Ex Parte Application* for a Protective Order or Stay on Discovery and/or Status Conference that Defendants Thomas Wylde, LLC, Jene Park, PALLIATIVE, and Steve Prestemon filed on **June 9, 2020**.  This Opposition is supported by the attached Declaration of Dimitrios Biller and exhibits, attached Memorandum of Points & Authorities, the Declarations of Paula Thomas and Dimitrios P. Biller previously filed in support of Plaintiffs' Motion for Preliminary Injunction, Motion for Criminal Contempt and Motion to Strive the Motion to Stay.

This Opposition is filed because Richard Peddie is once again claiming he represents Thomas Wylde, LLC when he cannot.  Furthermore, this Motion to Stay and Ex Parte Application for a Protective Order or Say is the same strategy Richard Peddie used in September/October 2017 to stay the Superior Court case and prevent discovery in the adversary proceedings.  Furthermore, the Motion to Stay that Peddie filed is fraudulently based on the notion that the Orange Court case will have an impact on this case.  Almost all Defendants have joined in the Motion to Stay and the Ex Parte Application for Protective Order because almost all Defendants are part of the Choi-Associate-in-fact-Enterprise.

Dated: June 14, 2020                          Respectfully suspected,
                                              By: /S/ Dimitrios P. Biller
                                              Plaintiffs PDTW, LLC and
                                              Paula Thomas

1
2

Table of Contents

3
4

DECLARATION OF DIMITRIOS P. BILLER ......................................................11

5

A.      Richard Peddie and Law Studio/Richard Bryon Peddie Does NOT Represent

6

Thomas Wylde, LLC..........................................................................................12

7
8

B.Fabrication of Evidence to Imply Hillshore Investment, S.A. Exists as

9

Legitimate Company.........................................................................................13

10
11

C.RICHARD PEDDIE'S ADMISSIONS THAT THOMAS WYLDE, LLC KEPT

12

SEPARATE FINANCIAL BOOKS FOR "INTERCOMPANY LOANS"

13
14

[MONEY LAUNDERING] ................................................................................18

15

D.EVIDENCE OF CONCEALING COMPUTERS ...............................................26

16
17

E.EVIDENCE OF BANKRUPTCY FRAUD, *18 U.S.C. §152* ............................30

18
19

F.INCONSISTENCIES BETWEEN CROSSCOMPLAINT IN SUPERIOR

20

COURT & COUNTERCLAIM IN ADVERSARY PROCEEDINGS...................31

21
22

INCONSISTENCIES BETWEEN CROSSCOMPLAINT & CLAIM NO 9 ........34

23

G.EVIDENCE JENE PARK IS NOT CEO/MANAGER OF TW .........................37

24
25

H.EVIDENCE OF PERJURY AND SUBROGATION OF PERJURY ................43

26
27
28

**PLAINTIFF PDTW, LLC AND PAULA THOMAS' NOTICE OF MOTION FOR CRIMINAL CONTEMPT - 4**

I.FRADULENT "ACTION BY WRITTEN CONSENT; RESOLUTION TO MAKE HILLSHORE A MEMBER ......................................................45

J.RICHARD PEDDIE HAS LED THE DEFENDANTS AS SHEEP DOWN THE PATH OF CORRUPTION, FRAUD, AND DECEIT IN THIS COURT ...............53

MEMORANDUM OF POINTS & AUTHORITIES ...............................................76

I.…… ...................................................................................................................76

INTRODUCTION ..............................................................................................76

II.…… .................................................................................................................78

STATEMENT OF FACTS ...................................................................................78

III.………...........................................................................................................79

ARGUMENT .....................................................................................................79

A.District Court Has Inherent Power To Not Allow Richard Peddie to Represent Thomas Wylde, LLC Or To Consider Any Pleadings He Files for Thomas Wylde, LLC…………………….. ...................................................................................80

B.Richard Peddie Is Repeatedly Violating Numerous *Rules of Professional Conduct*…………………… .................................................................................83

C.Richard Peddie Understands the Rules in This Courtroom because He has Filed and Opposed Many *Ex Parte Application* in Accordance with those Rules and Law……………………. ...................................................................87

D.There is No Such Device As a "*Ex Parte Application* for Protective Order and/or to Stay Discovery"……………………………………………………………...88

E.Defendants Ignored the Requirements of a Motion for Protective Order............89

F.The *Ex Parte Applications* Are Designed to Continue to Conceal Evidence that Has Been Concealed for Three Years.....................................................................90

G.This is a Discovery Matter that Should Have Been Filed with the Magistrate Judge According to the Standing Order.................................................................90

H.Substantive Failures of the *Ex Parte Applications* for Protective Order and/or Stay……………………………………………………………………………91

I.Peddie Wants To Argument the Merits of the Rule 12(b)(6) Motion...................93

1.Revised First Amended Complaint is Unrelated to Orange County ...................93

2.It Is Richard Peddie Who Has File a "Myriad" of Complaints/Claims and Fraudulent Pleadings...........................................................................................93

3.PDTW, LLC Does NOT Have a Statute of Limitation Issue ..............................94

4.Richard Peddie Fails To Attach Any Admissible Evidence to Support His Conclusory Arguments ............................................................95

5.Richard Peddie's Superficial Attack on the RICO Act Claim Is NOT Due to Time Limitations, but Due to a Lack of Legitimate Arguments ............................96

6.PDTW, LLC's Injuries Were NOT Downstream, but Immediately, and Tax Returns That Are Inconsistent with Banking Records are NOT Conclusory .........97

J.Richard Peddie Makes Yet Another Misrepresentation of Law and Fact.............98

K.Defendants Are Engaged in Unnecessary Delay Tactics to Prevent Plaintiff from Getting Her Day In Court ...........................................................99

IV…………….. ..............................................................100

CONCLUSION ............................................................100

# Legal Authorities

*18 U.S.C § 7201* ...............................................................................................95

*18 U.S.C §1152* ...............................................................................................94

*18 U.S.C §2315* ...............................................................................................95

*18 U.S.C §2320* ...............................................................................................95

*18 U.S.C §7206* ...............................................................................................95

*18 U.S.C. §1341* ........................................................................................ 94, 95

*18 U.S.C. §152(1) through (9)* .......................................................................94

*18 U.S.C. §1956* ..............................................................................................94

*18 U.S.C. §1957* ..............................................................................................95

*18 U.S.C. §2314* ..............................................................................................

# Rules of Federal Procedure

*Rule 11 of the Federal Rules of Civil Procedure* .........................................74

*Rule 11 of the Federal Rules of Civil Procedure.* ........................................75

*Rule 26(b)(5)(C) of the Federal Rules of Civil Procedure* ......................86

*Federal Rules of Civil Procedure, Local Rules for the Central District* ..............75

*Local Rules 37-1 and 37-1* ............…..............................................................87,95

*Business & Professions Code §17200* ..........................................................96

# Penal Codes

*Penal Code*

*§118(a)*……………………………………………………………………………… ..78, 79, 83

*Penal Code*

*§127*……………………………………………………………………………….78, 79, 83

*Penal Code §129*

………………………………………………………………………..78, 79, 83

*Penal Code §132*

……………………………………………………………………….78, 79, 83

*Penal Code 134*

………………………………………………………………………..78, 79, 83

*Penal Cond 135*

………………………………………………………………………..*78, 79, 83*

*182*………………………………………………………………… 78, 79, 83

.Rules of Professional Conduct

*Rule 1.2.1 of the Rules of Professional Conduct* .....................................................*83*

*Rule 1.6 of the Rules of Professional Conduct:* ........................................................*82*

*Rule 1.7 of the Rules of Professional Conduct* ........................................................*81*

*Rule 3.1 of the Rules of Professional Conduct.* .......................................................*84*

*Rule 3.3 of the Rules of Professional Conduct:* .......................................................*82*

*Rules of Professional Conduct*...................................................................................*74*

## DECLARATION OF DIMITRIOS P. BILLER

1.      I am the attorney for Paula Thomas, PDTW, LLC and Thomas Wylde, LLC.  Yes, I represent Thomas Wylde, LLC because Paula Thomas is the majority holder of units.  Plaintiffs will be dismissing Thomas Wylde, LLC at the appropriate time and with the Court's permission.  After dismissing Thomas Wylde, LLC as a Defendant with the Court's permission, Plaintiffs will amend the complaint to name Thomas Wylde, LLC as a Plaintiff upon the filing of a Motion for an Order for Leave to Amended.  I have personal knowledge of all the facts, events, circumstances, and documents described in this Declaration; I have obtained some of that knowledge from the documents that exist.  If called to testify, I would and could provide competent testimony on these issues based on my personal knowledge.  This Declaration sets forth admissible evidence of a pattern and practice of Richard Peddie abusing the discover process and the Rules of Civil Procedure with fraudulent documents filed with the Courts as he as done with his most recent filings in this case.  Richard Peddie continues to misrepresent himself as the attorney for Thomas Wylde, LLC.  That is a false representation.  Richard Peddie has never produced a scintilla of evidence proving he is.  His fraudulent behavior has to stop; he is causing Thomas Wylde, LLC serious harm, and I have filed a Motion for Preliminary Injunction for an Order that no attorney can

represent Thomas Wylde, LLC unless Paula Thomas authorizes the representation. All references to Exhibits with bates stamp number are set forth in the Declaration of Biller in Support of the Motion for Criminal Contempt, Motion for Preliminary Injunction and Motion to Strike the Motion to Stay.

> **A.**  **Richard Peddie and Law Studio/Richard Bryon Peddie Does NOT Represent Thomas Wylde, LLC**

2.  **Exhibit "65" [LDT02129-LDT002135]** shows that on March 17, 2017 Stephen Choi wanted Richard Peddie's legal advice as to whether Thomas Wylde, LLC would produce documents to Paula Thomas that she is entitled to receive, based on the company's own operating agreement, because she is a member. The documents were NOT produced. **Exhibit "105" [LDT003804]** is an e-mail exchanged between me and Richard Peddie in which he admits to representing Stephen Choi:

> **I have already told you that I represent Park, Prestemon, and The Palliative, LLC. You already know that I represent TW. You know that I represent Yoonsung Bae, Meldy Rafols and John Hanna. <u>And I represent Stephen Choi, which you also already know. As to the RICO case, you should assume that I represent TW and all of its members, their affiliates, and those current and</u>**

**past officers and employees that you have named. While this may**

**change in the future, that is the current situation until further**

**notice.  (Emphasis added)**

3.      Richard Peddie did not state he represents Hillshore Investment, S.A., DESNA Investment, LLC or Kata Global PTE Ltd.  Richard Peddie specifically stated he represent Stephen Choi.  Peddie cannot represent Stephen Choi and Thomas Wylde, LLC in the same litigation because Choi is not a member, owner, director, officer, managing agent or employee of Thomas Wylde, LLC, as clearly indicated by the Amended Restated Operating Agreement.  Stephen Choi is an outsider of Thomas Wylde, who has no operational standing for any matters related to the company. [**Exhibit "70", LDT002527- LDT002557; Exhibit "112", LDTW4655:1 - LDT004657:6]** Yet, Stephen Choi made John Hanna the CEO, and Hanna allegedly made Schnider the General Counsel.  It should be noted that Richard Peddie did not state he represents Hillshore Investment, S.A., yet it is Hillshore Investment, S.A. that allegedly owns the majority interests in Thomas Wylde, LLC. Nobody represents Hillshore Investments'. because it is a dummy company that does not exist.

**B.      Fabrication of Evidence to Imply Hillshore Investment, S.A.**

**Exists as Legitimate Company**

4.    **Exhibit "127" [LDT005446-LDT005448]** includes two letters written to Schnider, regarding the purchase of 3,300 units in Thomas Wylde, LLC. Peddie fabricated the letter allegedly signed by Gonzalez that omits any discussion about DESNA Investment, LLC making the $3,521,000.00 purchase.  He replaces Stephen Choi with Eniluz Gonzalez.  Bank records prove that DESNA dumped the money into Thomas Wylde, not Hillshore. **[Exhibit "109"; LDT003481-LDT003750]** Hillshore was a front. Peddie fabricated this letter to manipulate the parties and the courts into thinking that Hillshore was the majority owner and to continue the façade that Gonzalez was the President/Manager of Hillshore Investment, S.A. Peddie produced the ***fabricated letter in discovery***, but Plaintiffs obtained the real letter from Doug Lee at Doug Lee's deposition over one year later.

5.    The fabricated letter alone caused substantial delay in prosecuting this case, because it had to be proven to be a fraud.  This is but one example of Peddie lying under oath, manipulating judges, delaying litigation, and denying Plaintiffs their legitimate right of discovery. That is what Peddie and Schnider do best: conceal, destroy, and delay litigation.  Peddie never used the fabricated letter in either of his two oppositions to Plaintiffs' motions requesting proof that Hillshore Investment, S.A. existed as a legitimate company. **[Exhibit "81" and "55"]** Why

not? If Hillshore and this letter were legitimate, this document would have been appropriately used as proof in those situations. His failure to use it points to its fabrication. His choice to use it at all was careful. It was one thing to slip it into discovery early in the game before I had all the evidence I do now. It's another thing altogether to produce this blatant fraud to the court after so much other evidence (most coming from Doug Lee) proves Peddie's multiple frauds. Furthermore, Eniluz Gonzalez never produced the letter at her deposition and in response to the subpoena duces tecum. **[Exhibit "53", LDT001629-LDT001644 and Exhibit "54", LDT001645-LDT001831]** Peddie's fingerprints are all over that letter. Here are the letters side-by-side. On the left, is the authentic letter eventually produced by Doug Lee in Discovery. On the right is the letter Peddie fabricated earlier in litigation, to mislead Plaintiffs and the court.

| <u>Authentic Letter signed by Stephen Choi that Doug Lee Produced in November 2018</u> | <u>Fabricated Letter Peddie Manufactured</u> **With Eniluz Gonzalez and Produced To Mislead Plaintiffs in 2017** |
|---|---|
| <u>September 28, 2015</u>  VIA EMAIL | <u>September 28, 2015</u>  VIA EMAIL |

| | |
|---|---|
| **David Schnider** | **David Schnider** |
| **General Counsel** | **General Counsel** |
| Thomas Wylde LLC | Thomas Wylde LLC |
| 3231 S. La Cienega Blvd. | 3231 S. La Cienega Blvd. |
| Los Angeles, CA 90016 | Los Angeles, CA 90016 |
| | |
| Re: Exercise to Purchase Units | Re: Exercise to Purchase Units |
| Dear David: | Dear David: |
| Pursuant to the Notice of Approval of Action issued by Thomas Wylde, LLC on August 27th, 2015, **Desna Investments hereby commits to pay for 3,300 Membership Interests United of Thomas Wylde, LLC ("Units") at a price of $1,060.61 per Unit.  Desna** has available proof of funds to substantiate its ability to purchase those Units. | Pursuant to the Notice of Approval of Action issued by Thomas Wylde, LLC on August 27th, 2015, **Hillshore Investments hereby commits to pay for 3,300 Membership Interests United of Thomas Wylde, LLC ("Units") at a price of $1,060.61 per Unit.  Hillshore** has available proof of funds to substantiate its ability to purchase those Units, which it will make available to the Manager at the |
| If you have any further question, | |

| | |
|---|---|
| please do not hesitate to ask.<br><br>Sincerely,<br><br>Signed "Stephen Choi"<br><br>**Stephen Choi**<br><br>**(Biller's Decl., Ex. "12")** | manager's convenience within the 15 days exercise period or at Manager's earliest convenience thereafter."<br><br>If you have any further question,<br><br>please do not hesitate to ask.<br><br>Sincerely,<br><br>Signed "Gonzalez"<br><br>**Eniluz Choi**<br><br>**(Biller's Decl., Ex. "127")** |

**(Exhibit "127")**

6.     **Exhibit "127"** proves that Peddie fabricated evidence (September 28, 2020 letter allegedly signed by Eniluz Gonzalez), and then produced it in discovery to mislead Plaintiffs.  Peddie deleted all reference to DESNA, in an attempt to deceive the Plaintiffs into thinking Hillshore had purchased additional membership units, when it did not. Peddie produced a fraudulent letter, and this was only caught over a years later when Doug Lee produced the authentic letter showing that dummy corporation Hillshore Investments did NOT purchase additional Units in TW. The money came from another of Choi's dummy companies, DESNA

Investment, LLC (first organized under the laws of Colorado in April 2015, then organized under the laws of the State of California on November 6, 2015) who passed the money through Thomas Wylde, without ever receiving any units. **[Exhibit "76", LDT002604-LDT002612]** The $3,521, 000.00 was distributed by DESNA Investment, LLC after it became a California LLC to avoid racketeering activities, interstate transportation of moneys from unlawful activities.  **[Exhibit "109", LDT004040-LDT004178]**

7.      The Decl. of Biller contains e-mails in which Choi states Hillshore Investment, S.A. is going defunct.  **[Decl. of Biller, 56:1-59:2; Exs. "50" LDT001311- LDT001335]** Of course, the bank statements from Thomas Wylde, LLC confirm that DESNA Investment, LLC paid $3,521,000.00 for the 3,300 units, not "Hillshore Investment, S.A."  **[Exhibit "109", LDT004040-LDT004178]** The evidence that Hillshore Investment, S.A. does not exist is overwhelming.  **(Decl. of Biller, Sections I, II, and III)**

## C.    RICHARD PEDDIE'S ADMISSIONS THAT THOMAS WYLDE, LLC KEPT SEPARATE FINANCIAL BOOKS FOR "INTERCOMPANY LOANS" [MONEY LAUNDERING]

8.      From June 2017 to very recently, I have been asking Richard Peddie information about the locations of PDTW's computers and a copy of the

QuickBooks.  I have also made demands regarding both in formal discovery to Thomas Wylde, LLC.  **(Decl. of Biller, Exhibit "136", "148", "165")**  However, he had no problem telling the Trustee's counsel about these issues an making admissions that the evidence was being concealed.

From: Richard <lawstudios@comcast.net>

To: "Jessica Bagdanov" <jbagdanov@bg.law>

"Seror, David" <dseror@bg.law>

CC: "Zamora, Nancy" <zamora3@aol.com>

Date: 4/17/2018 9:23:00 PM

Subject: Fwd: Ex Parte Application

Jessica & David,

1. Obviously what Dimitrios says is pure rubbish. A head count of computers is neither here nor there: What is potentially important is whether or not relevant data was preserved.

2. Testing the existence or non-existence of data on hard drives by turning computers "on" is also just silly: A power supply or motherboard could have failed and yet the data could be fully intact on the drive(s) -- or may in fact reside on backup media on the server,

etc. And, don't forget that little workstations for designers are very unlikely to have the Quickbooks or any other crucial data on them. That stuff probably resided on the server, in Ed Smith's/Organic Intelligence's hands.

3. *Important: u-257? My* e-mails to Kring & Chung reflect that, after handing over the thumb drive to K&C, and whenever the PDTW Quickbooks file was requested of TW, **I was the first to point out that OUR version was not to be deemed 100% reliable. This is because TW never expected to have to produce again that file, and, to track intercompany loans we in fact made entries into "our" version of the PDTW Quickbooks file.** [Tax evasion] That version of the QB file was never really intended for outside consumption or for the reliance of anyone else. I pointed this out right and left to everyone, but they wanted our datafile anyway. We were just trying to track what should have happened, and all of this was mainly pre-litigation and then I think just the first few months of litigation when we had to revisit how these things would be classified. *See*, my e-mails to Nancy Zamora, etc., on this subject. **"Our" version was**

**<u>NEVER represented by us to be anything other than OUR</u>**

**<u>internal version</u>**.

BUT equally important is this: Notwithstanding the fact that K&C

were jumping up and down about getting the thumb drive in Sept. of

2015 "to get the taxes done," Thomas actually had Joseph Foster

complete and file PDTW's 2014 taxes before the Sept. 15 cutoff,

which is BEFORE we gave over any data. Thus, Foster likely still has

that version of the PDTW Quickbooks that was given to him by

Paula Thomas that he used to prepare PDTW's 2014 taxes. Just look at

the date of the return: It is *before* TW gave the USB drive to K&C.

(And it admits something like $1.8M in debt to TW . . .). I

did not know this until quite recently.

**<u>The truth: Neither what Foster has nor what we handed over,</u>**

**<u>strictly speaking, may be the final word on PDTW's accounting</u>**

**<u>through 2014 or thereafter. (Nor does it have to be . . .)</u>** Foster

never filed an amended return that I know of, and the only return

seems to be based upon something that was given to him before we

handed over the USB drive with "our" version. But, if you want an

admission, get, and use, whatever Foster has. BTW, **<u>Foster has</u>**

**clammed up on me. I wanted a declaration from him in the "Lawyer Lawsuit" to dispel this idiotic stuff Biller is saying about me. Foster agreed that he had no idea what K&C had sent him later on, and that it was just a Quickbooks file he couldn't open, but also acknowledged he had been able to open a file to do the 2014 taxes.** But when I sent him a declaration, to my knowledge he just ignored it. I should verify that with my attorney, Steven Wang at Parker Mills, LLP, but that's my understanding. I will need to press him when it comes time to finalize the reply in my Anti-SLAPP motion.

4. **It's always fun to use terms like "deep dive" and "metadata" and the rest to bamboozle the masses, but it's all bullshit at the end of the day. Thomas signed that 2014 tax return based upon some version of PDTW's QB file that she was satisfied with. It did not include ALL of TW's loans to PDTW; nor did it necessarily include intercompany transfers, some of which were in PDTW's favor. Still, if you want something that puts the lie to "deep dives" and crapola about "metadata" etc., get what Foster has. It may not be 100% complete or accurate, but Thomas endorsed it. As to**

**TW's position,** *see* **Claims 9 & 10 (even though 10 has been withdrawn). There is approx. $600K more that is not listed in Thomas' version of PDTW's debt, as listed on the 2014 tax return. Note also her ADMISSION as to officer debt. You probably don't even need the Quickbooks to prevail on your MSJ.**

Rbp

(Emphasis added)

**From:** "Dimitrios Biller" <biller_ldtconsulting@verizon.net>

**To:** "Jessica Bagdanov" <jbagdanov@bg.law>, "Richard" <lawstudios@comcast.net>

**Cc:** "David Seror" <dseror@bg.law>

**Sent:** Tuesday, April 17, 2018 6:18:41 PM

**Subject:** RE: Ex Parte Application

Jessica

I don't' want to access the computers in terms of imaging. I simply want to count the computers and turn them on to confirm there is data in the computers. I believe there is no such data and you will not allow me to confirm whether I

am right or wrong. If there is no data, then we have a

serious destruction of evidence problem (not necessarily

involving you firm); you simply cannot file a motion for

summary judgment based on accounting records from

QUICKBOOKS when there is no authenticity of that data

and confirmation with a deep dive inspection of the meta

data to show the QuickBooks are unreliable. The first step

is to count the computers and turn them on. Your refusal

will be the basis, in part, of my opposition to the motion for

summary judgment. You have been put on notice.

Dimitrios

**(Decl. of Biller, Ex. "167")**

9.     **Exhibits "166" and "167"** are documents that were **not** produced to

me, when I took the deposition of Trustee Larry Simons in April 2018, so I could

not ask him questions about these e-mails.  Of course, Richard Peddie did not

produce the documents in any discovery to Paula Thomas.  I have identified these

exhibits up front and center, because they constitute admissible evidence proving

(a) Park falsely testified on April 29, 2019, when she stated she left the PDTW,

LLC computers at PDTW when moving; (b) despite Peddie's refusal to admit to

courts and to me that he had control and custody of the PDTW computers, he did.
(c) Peddie withheld these PDTW computers from the Trustee; (d) Peddie tampered
with information on the PDTW computers and may have "wiped" information
from the computers at the discretion of Jene Park and himself; (e) Peddie sold
PDTW computers at his and Park's discretion; (f) the PDTW QuickBooks
provided by Peddie cannot be used to verify anything, because they were only used
internally to track "***intercompany loans***," [money laundering] was "**never really
expected for outside consumption or the reliance of anyone else**," and was
subject to change - such as when they began litigation and needed to "***revisit how
things would be classified***", i.e., to support tax evasion.  Here's what Peddie
himself had to say regarding the QuickBooks: **"I was the first to point out that
OUR version was not to be deemed 100% reliable."** He goes on to say the QB
he presented to the Trustee and to the Court was "our" version and that **"'Our'
version was NEVER represented by us to be anything other than OUR
internal version."**; (f) Peddie concealed financial information about PDTW, LLC
and computers from Thomas and the Trustee.  **(Emphasis added)**

10.     For years, Peddie and Park have concealed PDTW's computers
containing financial, banking, and creative information regarding the history of the
company. Paula Thomas owns 99.5% of PDTW, and her daughter owns the

remainder. Despite this ownership, Paula Thomas has been banned from PDTW'S accounting, financial, banking, and creative records, since Peddie fraudulently fired her, locked her out of her office, and cut her off from her company. She was not even allowed to collect her personal belongings.  Again, he has not produced the above evidence in discovery.

11.     Peddie did not turn over all of PDTW computers and books & records to the trustee in the Bankruptcy Proceedings in violation of *18 U.S.C. §152.* PDTW owned 50 computers, yet Peddie and Park only produced five to the Trustee and none to Plaintiffs. **(Exhibit "34"; LDT000675-LDT000676)** Thomas won the litigation rights to PDTW in the Adversary Proceedings and has continued to demand the return of her property.

### D.     EVIDENCE OF CONCEALING COMPUTERS

12.     In an email to the Trustee's council dated March 2017, Peddie admits that Thomas Wylde, LLC concealed PDTW's computers, iPads and other property, and felt entitled to tamper with, destroy or "wipe" the information from the devices at the discretion of Park and Peddie. These emails point directly to Peddie's destruction and concealment of evidence. This evidence relates to finances and the creation of the brand. Note: RBP stands for **R**ichard **B**yron **P**eddie:

1 - about **12 – 14 Apple Mac computers including keyboards and mouse**

/* RBP: For tomorrow, we will NOT be able to turn over any of these. We haven't had enough notice. We may wish to make an offer on them. We hoped you would forward the information to the auctioneer to get an idea as to value. But, we can ready them for delivery into the auctioneer's hands as well, but again, we need adequate notice. */

5- **2 black PC computers**

/* RBP: If these turn up, we will give them to the auctioneer UNLESS Jene says something about any important data being on them, in which case we will need time. I await instructions but believe we will just turn them over. */

7 - **about 8 iPads**

/* RBP: If these can be rounded up and if there is no data on them that needs to be wiped, we will give them to auctioneer. If time is needed to wipe them of proprietary data, we may need an accommodation here too. */

11- **CIM books with all PDTW company history**

/* RBP: Again, we will NOT give these up. */

PLAINTIFF PDTW, LLC AND PAULA THOMAS' NOTICE OF MOTION FOR CRIMINAL CONTEMPT - 27

/* RBP: These books are not so much PDTW company history as brand history. They contain financials and confidential information related to the brand and its performance. They are also evidence. They are essentially glossy securities documents. They likely have ZERO commercial value. Whatever miniscule theoretical value they have is wholly offset by the potential damage caused by a release of this confidential information. In other words, we claim them, and while we are punting lots of other things we also claim -- an example being archives -- we intend to hold on to these as part of the IP and as part of books and records and therefore collateral. In addition, these were created as part of the deal with Vendome Capital. TW negotiated down the debt and TW monies were used to pay off Vendome, which monies also therefore relate to the creation of the CIM. We do not mind allowing the Trustee or even Thomas' counsel to take custody, temporarily, of one copy each of these for review purposes. */

**(Decl. of Biller, Ex. "166", print color in original)**

13.    Next, Jene Park's testimony contradicts Peddie; either Peddie or Park is not telling the truth, or they are both lying.

BY MR. BILLER:

3 Q Okay. How many computers did -- existed at

4 PDTW up until the time TW -- Thomas Wylde came into

5 business? 02:14:43

6 A Well, when we had bankruptcy filed, we left

7 everything -- we left all the computers and we give

8 the exact photos of how many computers we have left

9 and all the list of how many computers we have left,

10 and gave that to trustee. 02:15:11

11 And later on we actually accidentally took

12 some of the older computers. We also told the

13 trustee or the list of everything we took.

14 Q How many computers were on that list?

15 A I don't remember. Trustee has that 02:15:27

16 information. We have information. So I'm sure that

17 we can pull that information. I don't remember out

18 of my head right now.

19 Q Do you know if it was more or less than 20?

20 A The one we took to our new one was, I want to 02:15:40

21 **say, less than 20, because we left a lot of them at**

22 **the PDTW office. The one we took to new office, I**

23 **want to say, less than 20.** But we have the list,

24 which I submitted it. So I don't remember exactly

25 now how many. 02:16:04

**Page 199**

1 Q Okay.

2 A But we can go back.

3 Q Did you give that list to Richard?

4 A Richard has them and trustee has them.

**(Exhibit "129")**

14.    Richard Peddie never produce that list of computers to me and

he never provided the information on the list in response to discovery.

**E.    EVIDENCE OF BANKRUPTCY FRAUD, *18 U.S.C. §152***

15..    Richard Peddie's submission and filing of the fraudulent Claim No. 9

for $2.4 million, and another to be filed for $2 million, in addition to the fraudulent

Counterclaim seeking ownership of the IP with the $2.5 alleged debt PDTW, LLC

allegedly owes Thomas Wylde, LLC is shocking and unconscionable.  Peddie,

Park and Schnider wasted two years of Plaintiffs' life in these fraudulent

proceedings. I prepared the Chart of Crimes for an easy reference to the criminal acts committed by Schnider, Peddie and Park, some of the admissible evidence supporting that position, and the specific criminals' statutes violated. **(Decl. of Biller, 507:21-520:12)** The Crosscomplalint Peddie filed in Superior Court impeaches the fraudulent Claim No. 9 and Counterclaim he filed in Bankruptcy Court.

## F.   INCONSISTENCIES BETWEEN CROSSCOMPLAINT IN SUPERIOR COURT & COUNTERCLAIM IN ADVERSARY PROCEEDINGS

| TW's Crossclaim filed in Superior Court for the State of California Signed by Peddie Regarding IP | Counterclaim that TW filed in the Adversary Proceedings in Response to the Trustee's Complaint Regarding IP |
|---|---|
| "As part of the Plan of Reorganization, THOMAS was to become one of the owners of Thomas Wylde, LLC, with membership units | "197. As alleged by Trustee, actual controversies exist as to ownership of the Copyrights and Trademarks at issue in this case. *See* Complaint ¶¶ |

evidencing her ownership, all for that consideration described in an Agreement to Purchase Membership Interest signed by THOMAS on Dec. 22, 2014."

"Under the Agreement to Purchase Membership Interest, THOMAS was to receive 64 Membership Units in TW. THOMAS has received these Membership Units and, as indicated in the FAC, is a member of TW.

Under the Agreement to Purchase Membership Interest, THOMAS was required to furnish $3,200.00 in the form of money as part of her capital contribution for the Membership Units. THOMAS did so. **Under the Agreement to Purchase Membership Interest, THOMAS**

101-102.

**198. TW instead contends that Debtor at all times understood and agreed that the subject intellectual property would be assigned to TW in exchange for those amounts expended by TW on its behalf or lent to it or used to pay off debts assumed by Thomas momentarily and solely for transactional and/or tax-motivated reasons.**

**199. TW thus contends that Debtor was at all times obligated to transfer to TW anything that Thomas herself could not transfer as part of the agreed-upon plan. Thus, TW lays claim to the intellectual property itself, as well as to those designs Thomas purported to assign to TW,**

was to assign to TW: All intellectual property rights and associated goodwill relating to the Thomas Wylde brand and designs, including, without limitation, any copyrights, trademarks, patents, trade secrets, or any other rights therein but specifically excluding Paula Thomas' name, image, likeness, biography and moral rights ("IP"). Agreement to Purchase Membership Interest, Exhibit A. THOMAS did so."

as well as to their embodiment, in the form of the archives."

"200. TW contends that Debtor's acceptance of millions of dollars on the one hand, as well as its acquiescence to the transfer of the intellectual property demonstrates Debtor's understanding and, more importantly, its performance of this plan."

"201. TW further contends that the fact that Debtor left the archives with TW demonstrates Debtor's understanding and, once again, its performance of this plan."

"202. Thus, TW contends that whatever defects or infirmities there may have been in the execution of the plan, the transfer to TW of the subject

| | intellectual property is not void. |
| | 203. Thus, TW contends that the archives were delivered to it and belong to it." |
| | "204. And thus, TW requests that this Court declare TW to be the owner of the Copyrights and Trademarks and the archives." |

## INCONSISTENCIES BETWEEN CROSSCOMPLAINT & CLAIM NO 9

| TW's Crossclaim filed in Superior Court for the State of California Signed by Peddie Regarding Debt | Claim No. 9 TW Filed In the United States Bankruptcy Court One Month Before Filing the Crossclaim in Superior Court |
|---|---|
| "177. PDTW and THOMAS breached the covenant of good faith and fair | "7. How much is the claim?" "$2,417,152.26" |

dealing implied in its agreements **[Employment Agreement and Operating Agreement]** with TW by, among other things: seeking to obstruct TW's liquidation of inventory; seeking to interfere with, and indeed denying, TW's rights in and to THOMAS WYLDE archive pieces; **disavowing debts incurred by PDTW to TW; seeking to recharacterize monies spent with PDTW's consent and on its behalf and for its benefit as things instead done for the benefit of others**; attempting to reclaim things they had already sold or that they know they must transfer to TW once certain PDTW secured debts are paid off, or otherwise things that they know are

"Does this amount include interest or other charges?"

""""SEE ATTACHMENTS""" No"

"Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A)."

"8. What is the basis of the claim?"

"Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information."

"Money Loaned to Debtor; Payment

| collateral for debts incurred to TW; and by disavowing those other things, they bound themselves to do under that **Plan of Reorganization described above the correct amount owed by PDTW to TW.**[1] | of Debtor's Debts/Liabilities" ***SEE ATTACHMENTS*** **[NO AGREEMENTS WERE ATTACHED AND TW ARGUED THERE ARE NO AGREEMENTS]** |
|---|---|

---

[1] There was never a Plan of Organization.  Under Corporate Code §1200:

1200.  A reorganization (Section 181) or a share exchange tender offer (Section 183.5) shall be approved by the board of:
   (a) Each constituent corporation in a merger reorganization;
   (b) The acquiring corporation in an exchange reorganization;
   (c) The acquiring corporation and the corporation whose property and assets are acquired in a sale-of-assets reorganization;
   (d) The acquiring corporation in a share exchange tender offer (Section 183.5); and
   (e) The corporation in control of any constituent or acquiring domestic or foreign corporation or other business entity under subdivision (a), (b) or (c) and whose equity securities are issued, transferred, or exchanged in the reorganization (a "parent party").
1201.
   (a) The principal terms of a reorganization shall be approved by the outstanding shares (Section 152) of each class of each corporation the approval of whose board is required under Section 1200, except as provided in subdivision (b) and except that (unless otherwise provided in the articles) no approval of any class of outstanding preferred shares of the surviving or acquiring corporation or parent party shall be required if the rights, preferences, privileges and restrictions granted to or imposed upon

**188. $2,554,409.67 which is the current amount of this debt, is due and unpaid despite demand or despite PDTW's repudiation of this debt, plus pre interest**

## G.     EVIDENCE JENE PARK IS NOT CEO/MANAGER OF TW

15.     There is a lot of evidence to prove that Jene Park is not CEO / Manager of TW. This is significant because she's taken the Brand underground and is selling merchandise through a "private message" system on Instagram. Park wrote an email to Choi trying to establish four CEO's of the company. Either way, she and the others referenced as CEO's cannot be CEO's without a vote, according to the Restated Amended Operating Agreement. No vote ever took place. For the purposes of this brief introduction, Plaintiffs rely on the June 15, 2016 e-mail from Jene Park to Stephen Choi:

that class of shares remain unchanged (subject to the provisions of subdivision (c)).  For the purpose of this subdivision, two classes of common shares differing only as to voting rights shall be considered as a single class of shares.

**From:** Jene Park <jene@jenejen.com>

**Sent:** <u>**Friday, June 03, 2016 8:36 PM**</u>

**To:** Stephen Choi; Doug Lee; Roger Kuo

**Subject:** Book4.xlsx; A TT0O00l.txt

**Attachments:**

Thank you for meeting me today.

Per our conversation, I went through the numbers and have come up

with an annual budget that I can meet for your review.

Some of major changes are:

* Payroll based on 11 team members including myself and I kept

everybody's salary as is for now. It is hard to retrain the

team and I would rather cut the members but keep the remaining

team's salary as it to keep morale up.

* Significantly reduce the sample cost from $1,498K to $500K. I **plan**

to focus on core product which is 50% of the collection.

* Payroll and outside service reduced from $1,900K to $670K.

* Fashion show was changed to presentation reduced from $4SOK to

$60K.

**• This, of course, does not include a CEO position in the budget for now, I am assuming those duties will be taken over by the four of us.** Total Expenses reduced from $6.5 M to $3.l M Based on $4.0 M sales expected net loss $1.lM for the first year.

Expected to break even for the 2nd year.

Stephen,

Again, I believe with the current condition of the company revenue and uncontrollable expenses and the lawsuit, even with a clear plan (roadmap to recover), I think it will be extremely difficult to find an investor/buyer.

**My plan is to reduce the bleeding and to put the company in a better situation and keep it float without major additional funds. I think this way you can probably have much better chance to sell**.

**As I said earlier, at any point, <u>if you sell the company</u>, I am more than happy to help the transition and move on, otherwise I would like to have 2 years to bring <u>your company to a lot better situation</u>.**

In return, I only ask you to treat me fairly based on my performance and results and compensate me accordingly as the company recovers.

One thing I would like to ask is regardless of your decision, I

would like you to share it with me as soon as possible.

**(Decl. of Biller, Ex. "152")**

16.     For each time Park testified or declared under penalty of perjury she

was the CEO of Thomas Wylde, LLC, she committed perjury.  No owner of units

voted to appoint Park the CEO.  Schnider drafted a Notice of Proposal of making

her a CEO, but the actual notice of consent was never signed by anybody. There

are no minutes documenting a vote. Plaintiff has obtained a document named

"**NOTICE OF PROPOSED ACTION BY WRITTEN CONSENT AND

REQUEST FOR CONSENT TO THE MEMBER OF THOMAS WYLDE** that

"Hillshore Investment" proposed Jene Park to be the Manager, but no vote took

place.  Paula Thomas was not given notice of this proposal, she did not vote on it,

and Plaintiffs do not have a signed copy.  Schnider signed the Notice, but no

signatures appear on other the signature page for the members. **(Decl. of Biller, Ex.

"2")** Hillshore Investments does not exist to form a supermajority, according to

Amended Restated Operating Agreement.  Paula Thomas would have to approve

of Jene Park being the CEO and that would never happen.

5.4. **Manager's Powers and Limitations.** The Manager of the

Company shall have all powers and authority provided by this

Agreement and the Act. Notwithstanding the foregoing, the Manager shall not take any of the actions described in Section 7.3 unless it has been approved by the Members by Vote of a Supermajority of Members.

5.8. **Removal and Replacement of Manager.** The Manager shall serve until the earlier of: (a) the Manager's resignation, retirement, death, or disability, (b) the Manager's removal by Vote of a Supermajority of Members or (c) the Manager ceasing to be a Member of the Company. A new Manager shall be appointed by Vote of a Supermajority of Members.

17.     Choi terminated Hanna and there was not a supermajority vote.  Also, Choi has no operational authority because he is not an owner, member or officer of Thomas Wylde, LLC. Choi is a company outsider. **(Exhibit "33"; LDT000665-LDT000664)** On July 16, 2016, Schnider drafted a Proposed Consent to Take Action to make Park the CEO, but it was never executed.  **(Exhibit "2", LDT000044- LDT000045)** Park repeatedly testified that she is a "part-time" CEO and that is consistent with her concept of Choi, Hanna, Lee and Park being four CEOs.

• **This, of course, does not include a CEO position in the budget for now, I am assuming those duties will be taken over by the four of us.** Total Expenses reduced from $6.5 M to $3.l M Based on $4.0 M sales expected net loss $1.lM for the first year.

See **Exhibit "152"** *supra*.  Park was proposing to help Stephen Choi, NOT Hillshore Investment, S.A. to sell the business.  Of course, the "Four Horseman CEO" strategy violates the Amended Restated Operating Agreement:

5.1. **Managed** by **Manager.** Subject to Sections 5.4 and 7.3, the business of the Company shall be managed by one Manager, who may also be a Member. Except as otherwise set forth in this Agreement, all decisions concerning the management of the Company's business shall be made by the Manager. The Manager shall also serve as the Chief Executive Officer ("CEO") of the Company. The Manager shall have general supervision of the business and affairs of the Company, shall preside at all meetings of Members and the Executive Committee, and shall have any other powers and duties usually vested in a CEO. The Manager may also provide for additional Officers of the Company

from time to time and shall establish the powers, duties, and

compensation of all other Company officers and employees.

**(Exhibit "70")**

There is nobody at Thomas Wylde, LLC who is supervising,

managing, and approving of Peddie's representation of Thomas Wylde.  It is

undisputed he is working for Stephen Choi and Stephen Choi is not an

owner or member of Thomas Wylde, LLC; Paula Thomas is the majority

owner.

## H.    EVIDENCE OF PERJURY AND SUBROGATION OF PERJURY

16.    Richard Peddie and David Schnider have prepared, signed and filed

declarations stating that Paula Thomas took personal responsibility over debt

Thomas Wylde, LLC paid for PDTW, LLC.  This is not true.  David Schnider

informed Apfelberg that PDTW, LLC was not going to have debt after Thomas

Wylde, LLC paid off the CBC loan of $1.65 million and the Prestemon loans:

**Re: Redlines**

From: David Schnider <david@thomaswylde.com>

To: "Apfelberg, Andrew M." <aapfelberg@greenbergglusker.com>

Cc: Paula Thomas <paula@thomaswylde.com>, John Hanna

<johnhanna@thomaswylde.com>,

"Spillers, Katy" <kspillers@greenbergglusker.com>

**Date:** ==**Mon, 22 Dec 2014 12:23:00 -0800**==

**Paula is aware that the $2M is going to pay the CBC and**

**Prestemon loans.** There should be little or no balance remaining once

that is done. **PDTW will continue to operate nominally, but at the**

**end of the year, all employees will be transferred to Thomas**

**Wylde.** ==**PDTW has already paid off all of its manufacturers and**==

==**they are now doing business with Thomas Wylde**==. **There should**

**not be any personal exposure to Paula on either trade debt or**

**employee liabilities, but we agreed to include them in the**

**indemnity agreement just in case**.

17.    I have read David Schnider's May 8, 2018 Declaration. That

Declaration states in part:

The second chain, commencing at **OppMSJ00040,** shows

communications on and just before Dec. 22, 2014, the date Paula

Thomas signed the APMI and related instruments.

TW was bound, under the APMI and attachments, to pay off CBC Partners I, LLC for Thomas. *See* **Exhibit B** -APMI CJ[ 6(d) **(OppMSJ00012 & 000116** - liabilities assumed) & Use of Proceeds Agreement CJ[ 1 **(OppsMSJ00020) .**

**As one can see, Debtor PDTW, LLC, had delegated the CBC Partners I, LLC debt to Thomas - Exhibit C - and Thomas had accepted liability for that debt - OppMSJ00028.** I am informed and believe that TW in fact paid off CBC Partners I, LLC as well as all other creditors TW was bound to pay off under the APMI and Use of Proceeds Agreement.

## I.     FRADULENT "ACTION BY WRITTEN CONSENT; RESOLUTION TO MAKE HILLSHORE A MEMBER

18.     This document is part of **Exhibit "184"** and is bates stamped 0221. Despite serving Thomas Wylde, LLC  with substantial discovery from June 2017 to the taking of PMK witnesses (Jene Park) on August 10, 2017 and April 29, 2019, Thomas Wylde, LLC, David Schnider and Richard Peddie never produced Exhibit "169" in response to any Superior Court discovery, or (I believe) in response to discovery served in bankruptcy, in Opposition to Paula's Motion for Partial Summary Judgment, in Opposition to Thomas' Motion for Disqualification or in

response to the subpoena duces tecum served on Eniluz Gonzales and David Schnider.

19.    I have reviewed the documents Greenberg Glusker produced.  All of the e-mails exchanged between David Schnider and Andrew Apfelberg in December 2014 that relate to the "investment documents" do NOT include **Exhibit "184"** and there was not any discussion about drafting **Exhibit "184."**  This exhibit has to be considered an investment document, because it allegedly allows Hillshore Investment, S.A. to join Thomas Wylde, LLC as a "member" holding 90 units for $5.5 million.  There is NO evidence that a supermajority vote was obtained to allow this to happen:

7.3. **Acts Requiring Member Vote**. Except as otherwise provided in this Agreement or by the Act, all of the following acts shall require the consent by Vote of a Supermajority of Members:

(a) Any act that would make it impossible to carry on the ordinary business of the Company;

(b) Any confession of a judgment against the Company;

(c) The dissolution of the Company;

**(d) <u>The disposition, sale, transfer, assignment or license of all or a substantial part of the Company's assets not in the ordinary course of business</u>**;

(e) The incurring of any debt not in the ordinary course of business;

**(f) <u>A change in the nature of the principal business of the Company or establishment of new or diffusion product lines;</u>**

(g) The filing of a petition in bankruptcy or entering into an assignment for the benefit of the Company's creditors;

(h) The entering into, on behalf of the Company, of any transaction constituting (i) a "reorganization" within the meaning of Corporations Code §17711.01 or (ii) a sale, merger, or conversion of the Company;

**(g) The incurring of any contractual obligation or the making of any capital expenditure with a total cost of more than $500,000;**

**(h) <u>The issuance or redemption of any Membership Interest (including the terms thereof);</u>**

(i) Making operating or liquidating distributions to Members;

(j) The Transfer of any Membership Interest (other than to a Permitted Transferee);

**(k) The admission of any new Member (other than a Permitted Transferee);**

(l) Instituting, settling, or compromising of any claim or litigation for more than $100,000;

**(m) Any transaction between the Company and a Member or an Affiliate of a Member or between the Company and a Manager or an Affiliate of a Manager;**

(n) Approval of annual budget and deviation of more than 10% for any line item in any previously approved budget;

(o) Paying any officer or employee more than $200,000 per year; and

(p) incurring any debt secured by the assets of the Company and all amendments and modifications thereto.

20.      I have not seen any document reflecting a supermajority vote for "Hillshore Investment, S.A." to join as a member of Thomas Wylde, LLC.  I have not seen any Notice to members regarding an "Action by Written Consent" to allow Hillshore Investment, S.A. to become a member. I have not seen any e-mails distributing the document presented here as **Exhibit "184."**

21.      This Document is fraudulent. ***First,*** Paula Thomas was in Uruguay on January 1, 2015, when this document was allegedly signed, yet all signatures

appear on the same signature page, dated the same day. This is impossible. This is one of the ONLY documents where all signatures EVER appear together, as usually the members sign separately on separate copies. *Second*, there is no "fax information" on the signature page, which would have happened had it been faxed to her in order for her to sign on the same page and same date as everyone else. *Third*, there is no evidence that I could find indicating Andrew Apfelberg approved of this document and evidence that the document went through the back-and-forth exchange of redline versions between Schnider and Apfelberg like the other investment documents. *Fourth*, the document is dated "January 1, 2015", but not "with an effective date of January 1, 2015" like all other investment documents. *Fifth*, there are not any e-mails between Apfelberg in Thomas' legal files exchanged between Apfelberg and Thomas regarding this document. *Sixth*, Richard Peddie never filed this document as an exhibit in support of any Opposition to any Motion to support his argument Hillshore Investment, S.A. exists; it was not cited as an exhibit in the Statement of Genuine Issue of Material Fact or in support of the Motion to Disqualify Peddie to support the statement Hillshore Investment, S.A. exists.  Seventh, Eniluz Gonzalez did not allegedly become the "President" and "General Manager" until **JANUARY 7, 2014**, so there was nobody at Hillshore Investment, S.A. to agree to invest $5.5 million and loan

$2 million to Thomas Wylde, LLC. **[Exhibit "49", LDT001311-LDT001335] The Resolution is a fraud. That is why Richard Peddie NEVER used this document in his fraudulent claims that Hillshore Investment, S.A. exists.**

22.    Doug Lee, Roger Kuo, Jene Park, and John Hanna signed the original fraudulent Operating Agreement noting in that agreement there were 46 Units and identifying the number of Units each person had. When Paula Thomas became a member with 64 units, the Operating Agreement was changed to the Amended Restated Operating Agreement to note the total units of 110 and the number of units for each member. [**(Exhibit "70"; LDT002527- LDT002557 and Exhibit "20"; LDT00000352- LDT000381]** That procedure never took place when "Hillshore Investment" allegedly became a member. Hillshore allegedly joined, yet the total number of available units never increased to reflect the new 3300 units "purchased." The Operating Agreement was also never Amended to recognize that Hillshore had become a member. This is because Hillshore never became a member and did not care. Choi was using Hillshore as a front to launder money and commit tax evasion. Merely amending Exhibit "B" to note the "Hillshore Investment, S.A." is a member with a capital contribution of $5.5 is meaningless. There is NOT evidence where that $5.5 million went. They'd gotten rid of Paula Thomas, and no longer needed to keep pretending that Thomas Wylde

was anything other than a money laundering tool for Choi. They made a big deal out of the purchase of units to make sure Paula Thomas never got control of her Brand again, as detailed in their email chain on this subject. This same chain indicated that they backdated Choi's notice of intent to purchase, because he, Hillshore, or any other interested party had missed the deadline and was not even entitled to purchase units.

23.     Furthermore, there was never a vote to pay for PDTW, LLC alleged $2.4 million expenses that Thomas Wylde, LLC claimed in Bankruptcy Court; there was never a vote to pay PDTW, LLC's alleged $2 million for alleged expenses stated on Claim No. 9.  Thomas Wylde, LLC took the position in Bankruptcy Court that PDTW, LLC owed it $4.4 million in Claim No. 9, but there is NO record of a supermajority vote by Thomas Wylde, LLC agreeing to pay these expenses. **From January 2015 to the time Plaintiff Paula Thomas was fired, she was in control of the company and she did not vote to pay $4.4. million of alleged debt accumulated by PDTW, LLC**.

24.     As required by Clause 7.3 of the Amended Restated Operating Agreement, here is no evidence that a supermajority vote was obtained to authorize Jene Park to move the company to an unknown location, as she has now done. Jene Park has moved the business location of Thomas Wylde, LLC and Richard

Peddie will not inform Plaintiffs or Counsel of the company's current physical location. Jene Park is selling garments by appointment only, solicited over Instagram and private sales. When she splashes a "TW" garment on Instagram, if someone asks how they can purchase it, Jene Park instructs them to privately message her.  She has essentially wrongfully taken all of the property of Thomas Wylde, LLC and moved it for private sales, without providing notice to Plaintiff.

25.     These Ex Parte Applications for Protective Order or Stay Discovery and the Motion to Stay the litigation came right out of Richard Peddie's play book, and his pattern and practice of delay and obfuscation. Less than 30 days before the Superior Court trial in 2017, Richard Peddie convinced the Trustee to file an adversary complaint in the bankruptcy court**. (Exhibit "56"; LDT0001907- LDT001910)** Special Counsel for the Trustee appeared in Superior Court and requested a stay of the October 10, 2017 trial, and it was granted.  Paula Thomas turned her attention to conducting discovery in the adversary proceeding.  In this federal case, Peddie filed a Motion to Stay on May 20, 2020. Richard Peddie is now attempting to recreate the delay and chaos in this federal court, that he previously unleashed on the Superior and Bankruptcy Courts. In this federal court, Peddie organized the adverse parties to Paula Thomas, and they filed the

same ex parte applications to stay discovery that have been filed in this case. In Bankruptcy, Judge Yun essentially denied the request after making all the parties comply with *Rule 26(c) of the Federal Rules of Civil Procedure* and *Local Rule 37-1,* but Defendant were successful in delaying discovery for a year by simply not complying. I had to refile motions just to get discovery. Furthermore, both Peddie and David Schnider continue to violate these discovery orders issued in other courts.  Under Clause 7.3, a supermajority vote is needed: **(g) The incurring of any contractual obligation or the making of any capital expenditure with a total cost of more than $500,000;**

## J.   RICHARD PEDDIE HAS LED THE DEFENDANTS AS SHEEP DOWN THE PATH OF CORRUPTION, FRAUD, AND DECEIT IN THIS COURT

26.   Richard Peddie filed the Motion to Stay, and he "joined" the Ex Pate Application for a Protective Order or Stay, or in the alternative, Status Conference. The foundation of both pleadings is false; Judge Claster's decisions on demurrers in Orange County will NOT adversely affect Plaintiffs' claims in this case. Defendants reason that a number of claims Paula Thomas brought in Los Angeles County were dismiss, so Judge Claster has to dismiss the claims brough by PDTW,

LLC in Orange County.  If that were true, then Defendants should be ordered to
file their motions to dismiss now in this case.

27.     Richard Peddie, a Defendant in this action, included a "Chart"
attempting to prove that there are overlapping claims between this case and the
action in Orange County.  In doing so, Richard Peddie is committing any fraud on
the Court because it is irrelevant if claims of the same kind are pending in two
courts, the claims have to involve the same parties (same Plaintiffs and
Defendants); and same factual situation.  Richard Peddie conceals that information
from his "Chart."  Below is a reproduction of Peddie's' Chart:

| Cause of Action ("CoA") | FRICO II | Lawyer Lawsuit III |
|---|---|---|
| RICO | YES -1st CoA | NO |
| Trademark Infringement | YES -2nd CoA | (YES) (nested in UCL) |
| Copyright Infringement | YES -3rd CoA | (YES) (nested in UCL) |
| State Unfair Competition ("UCL") | YES -4thCoA | YES – 23 COA |

| | | |
|---|---|---|
| **Fraud** | **YES -6th CoA** | **YES - 7th, 9th, 11th & 14th, 15th, 18th, 20th CoAs** |
| Fraud by Concealment | YES -6th CoA | YES – 5th, 6th, & 8th CoAs |
| Inten. Interf. Contractual Relationships | YES -5th CoA (erroneously referred to as the 7th CoA) | YES |
| Intent. Interf. Prosp. Advantage | YES -7th CoA | YES – 17th CoA |
| Negligent Interf. Prosp. Advantage | YES - -8TH CoA | YES – 16th CoA |
| Negligent Misrepresentation | YES -1st CoA | YES – 21st CoA |
| Declaratory Relief | YES -1st CoA | YES – 24th CoA |
| Injunctive Relief | YES -1st CoA | YES – 29th CoA |
| Breach of Fiduciary Duty | NO | YES – 1st and 22nd CoA |
| Breach of Oral Contract | NO | YES – 12th CoA |

| | | |
|---|---|---|
| Legal Malpractice | NO | YES – 13th CoA |
| **False Promise** | **NOT INCLUDED IN PEDDIE'S CHART** | **NOT INCLUDED IN PEDDIE'S CHART** |
| Breach of Written Contract | NO | YES- 12th CoA |
| Breach of Oral Contract | NO | YES – 13th CoA |
| Negligence | NO | YES – 21st CoA |

28.    The Chart Richard Peddie prepared and stuck in the Motion to Stay is meaningless.  Furthermore, it is deceiving as drafted.   For example, there are **seven separate claims in the Orange County action for fraud/intentional misrepresentations** based on:

(a) Attorney Representative Agreement against David Schnider,

(b) February 5, 2014 Engagement Agreement against Greenberg and Schnider,

(c) Binding Term Agreement,

(d) $1,782,000.00 "advance" in 2014 tax return for PDTW,

(e) Kring & Chung Retainer fee Agreement,

(f) Kring & Chung Amended Retainer Fee Agreement against Kring & Chung and

(g) Isaacson Engagement Letter.  However, none of these documents re the subject of the only fraud claim.

29.    The federal claim for fraud is based on the July 18, 2014 e-mail agreement.  There are more than 7 times claims for fraud in Orange County than in federal court and NONE overlap.  This point is clearly proven when all the relevant information is included as in the Chart, I prepared by reviewing the claims in the Orange County and Federal Actions.

30.    The Defendants have taken the position that the Orange County demurrers will resolved the issues in this case, so this case should be stayed and a protective order/stay on discovery should be issued.  Defendants rely on *Colorado River* and Richard Peddie presents "Chart" to the court attempting to prove this meritless point.  The Chart Richard Peddie stuck in the middle of the Motion to Stay is irrelevant, immaterial and another attempt to commit fraud on the Court by concealment.  The "Chart" does not include any information about which plaintiffs are suing which defendants in both the Orange County case and this case.  When that information is plugged into a real "Chart", it is obvious that there are not any overlapping claims involving he same parties and issues.  There are 24 claims in the Orange County case and 20 of those claims do NOT overlap, at law.  Those

claims re in blue.  The four claims in both the Orange County and Federal action are in green.  Those claims do not even involve the same Defendants.

| CAUSE OF ACTIONS | FEDERAL PLAINTIFFS | FEDERAL DEFENDANTS | ORANGE COUNTY PLAINTIFFS | ORANGE COUNTY DEFENDANTS |
|---|---|---|---|---|
| RICO ACT | PDTW, LLC THOMAS | 55 DEFENDANTS | NO ACTION PENDING | NO ACTION PENDING |
| TRADEMARK INFRINGEMENT DAMAGES | PDTW, LLC THOMAS | 18 DEFENDANTS | NO ACTION PENDING | NO ACTION PENDING |
| COPYRIGHT INFRINGEMENT DAMAGES | PDTW, LLC THOMAS | 18 DEF. | NO ACTION PENDING | NO ACTION PENDING |
| UNFAIR, ILLEGAL, AND FRAUDULENT BUSINESS PRACTICES | PDTW, LLC THOMAS FOR VIOLATION OF FEDERAL AND STATE CRIMINAL CODE | 55 DEF. | PDTW, LLC THW, LLC FOR OTHER CONDUCT INCLUDING COPYRIGHT AND TRADEMARK INFRINGEMENT | CHOI, SCHNIDER, PEDDIE, GONZALEZ AND PARK |

PLAINTIFF PDTW, LLC AND PAULA THOMAS' NOTICE OF MOTION FOR CRIMINAL CONTEMPT - 58

| | SECTIONS | | | |
|---|---|---|---|---|
| FRAUD BY CONCEALMENT | NO ACTION PENDING | NO ACTION PENDING | PDTW, LLC | *KRING & CHUNG, HANNA, LEE, AND SCHNIDER* (Four Separate Claims) |
| FRAUD | PDTW, LLC AND TWH, LLC BASED ON JULY 18, 2014 E-MIAL, BINDING TERM AGREE. | CHOI, LEE, KOU, SCHNIDER, APFELBERG, HANNA, PARK AND GONZALEZ | PDTW, LLC, BASED ON ENGAGEMENT LETTERS, $1,782,000.00 2014 alleged advance; Agreement to Purchase, Binding Term Agreement, Greenberg Engagement Letter; Isaacson Engagement Letter, Schnider Engagement Letter, Kring & | GREENBERG APFELBERG, AND SCHNIDER BASED ON FRAUD ENGAGEMENT AGREEMENTS (6 Separate claims) |

| | | | | |
|---|---|---|---|---|
| | | | **Chung Retainer Fee Agreement, Amended Retainer Fee Agreement by Kring & Chung** | |
| **INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIP** | PDTW, LLC | CHOI DEFENDANTS SCHNIDER DEFENDANTS PARK DEFENDANTS KYU HONG KIM DEFENDANTS | NO ACTION PENDING | NO ACTION PENDING |
| **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONSHIP** | NO ACTION PENDING | NO ACTION PENDING | PDTW, LLC | GREENBERG, APFELBERG, AND SCHNIDER |
| **NEGLIENT MISREPRESENT** | PDTW, LLC | KRING & CHUNG AND MISTY | NO ACTION PENDING | NO ACTION PENDING |

|  |  | ISAACSON |  |  |
|---|---|---|---|---|
| **DECLARATORY RELEIF** | **PDTW, LLC** | **AS A REMEDY** | **PDTW, LLC** | **STOP INFRINGEMENT** |
| **INJUNCTIVE RELIEF** | **PDTW, LLC** | **55 DEF.** | **PDTW, LLC** | **SCHNIDER, PARK, LEE, HANHA, KOU** |
| **BREACH OF FIDUCIARY DUTIES** | **NO ACTION PENDING** | **NO ACTION PENDING** | **PDTW, LLC THOMAS WYLDE HOLDING, LLC** | **K & C, ISAACSON, K&C, ISAACSON, SCHNIDER, ISAACSON, LEE, KOU, KF PROFESSIONAL KYU KIM HONG, JENE PARK, JOHN HANNA** |
| **BREACH OF WRITTEN CONTRACT** | **NO ACTION PENDING** | **NO ACTION PENDING** | **PDTW, LLC** | **KRING & CHUNG, SCHNIDER AND** |

| | | | | |
|---|---|---|---|---|
| | | | | GREENBERG |
| LEGAL | NO | NO | PDTW, LLC | SCHNIDER, |
| MALPRACTICE | ACTION | ACTION | | NOLAN, |
| | PENDING | PENDING | | KRING & |
| | | | | CHUNG |
| | | | | GREENBERG |
| | | | | ISAACSON (3 |
| | | | | separate claims) |
| NEGLIGENCE | NO | NO | PDTW, LLC | JE |
| | ACTION | ACTION | TWH, LLC | NE PARK, |
| | PENDING | PENDING | | DAVID |
| | | | | SCHNIDER, |
| | | | | JOHN HANNA, |
| | | | | KF |
| | | | | PROFESSIONAL |
| | | | | NORMAN KO, |
| | | | | JOESPH |
| | | | | FOSTER, KYU |
| | | | | HONG KIM, |
| | | | | KYU HONG |
| | | | | KIM, CPA, INC., |
| | | | | ALLISON KIM |
| INTENTIONAL | NO | NO | PDTW, LLC | CHOI, LEE, |
| INTERFERENCE | ACTION | ACTION | AND THW, LLC | KOU, |

| | | | | |
|---|---|---|---|---|
| WITH ECONOMIC RELATIONSHIP | PENDING | PENDING | | SCHNIDER ALPHEBERG, HANNA, PARK, AND GONZALEZ |
| FALSE PROMISE | NO ACTION PENDING | NO ACTION PENDING | PDTW, LLB | KRING & CHUNG |
| BREACH OF ORAL CONTRACT | NO ACTION PENDING | NO ACTION PENDING | TWH, LLC | SCHNIDER |

31.     Since the Orange County cases will be dismiss by Judge Claster based on Judge Scheper's dismissals of Paula Thomas' claims against Defendants there is no reason for the stay or delay on discovery because Defendants can file Rule 12(b)(6) motion now.  The do not want to because the decisions Judge Scheper made in the Los Angeles Superior Court do not have any impact on the Orange County cases.  The Chart below includes the names of the Plaintiffs, the names of Defendants and the causes of action Plaintiffs are pursuing against each

Defendants.  The black portions of the Chart indicate the same plaintiffs and

defendants are NOT in both actions.

| CLAIMS | LASC PLAINT. | LASC DEFEND. | OSC PLAIN. | OSC DEFEND |
|---|---|---|---|---|
| Breach of Fiduciary Duty | PAULA THOMAS | Schnider, Kring & Chung, Greenberg | PDTW TWH | K&C, Isaacson, Schnider, Lee, Kou, KF Pro. Park, Hanna, Greenberg |
| Legal Malpractice | PAULA THOMAS | Schnider, Greenberg, Kring & Chung | PDTW | K & C Isaacson |
| Legal Malpractice | NO ACTION | NO ACTION PENDING | Thomas PDTW | Schnider |

|  |  |  |  |  |
|---|---|---|---|---|
|  | **PENDING** |  | **TWH** |  |
| Legal | **NO ACTION** | **NO ACTION** | **PDTW** | **Greenberg** |
| Malpractice | **PENDING** | **PENDING** | **TWH** |  |
|  |  |  |  |  |
| Fraud By | **NO ACTION** | **NO ACTION** | **PDTW** | **Schnider** |
| Concealment | **PENDING** | **PENDING** | **TWH** | **Apfelberg** |
| (February 5, |  |  |  | **Greenberg** |
| 2014 |  |  |  |  |
| Engagement |  |  |  |  |
| Letter |  |  |  |  |
| Fraud by | **NO ACTION** | **NO ACTION** | **PDTW** | **Schnider,** |
| Concealment | **PENDING** | **PENDING** |  | **Hanna,** |
| [Binding |  |  |  | **Apfelberg** |
| Term |  |  |  | **Greenberg** |
| Agreement] |  |  |  | **Lee/ Kou** |
|  |  |  | **PDTW** | **Schnider,** |
| Intentional | **NO ACTION** | **NO ACTION** |  | **Hanna,** |
| Fraud | **PENDING** | **PENDING** |  | **Apfelberg** |
| [Binding |  |  |  | **Greenberg,** |
| Term |  |  |  | **Lee/ Kou** |
| Agreement] |  |  |  |  |
| Fraud by | **NO ACTION** | **NO ACTION** | **PDTW** | **Kring &** |

**PLAINTIFF PDTW, LLC AND PAULA THOMAS' NOTICE OF MOTION FOR CRIMINAL CONTEMPT - 65**

| Concealment [First Retainer Fee Agreement] | PENDING | PENDING | | Chung |
|---|---|---|---|---|
| Fraud [Opinion Letter] | | | PDTW | Kring & Chung |
| | | | PDTW | Kring & Chung |
| Fraud [Amended Retainer Fee Agreement] | NO ACTION PENDING | NO ACTION PENDING | | Chung |
| False Promise | NO ACTION PENDING | NO ACTION PENDING | PDTW | Kring & Chung |
| Breach of Contract | NO ACTION PENDING | NO ACTION PENDING | PDTW | Kring & Chung Schnider Greenberg |
| Breach of Oral Contract | NO ACTION PENDING | NO ACTION PENDING | TWH | Schnider |

| | | | | |
|---|---|---|---|---|
| Fraud (Legal Represent. Agreement) | **NO ACTION** **PENDING** | **NO ACTION** **PENDING** | **PDTW** | **Schnider** |
| Fraud Greenberg Engagement Let | **NO ACTION** **PENDING** | **NO ACTION** **PENDING** | **PDTW** **TWH** | **Schnider** **Greenberg** |
| Negligent Interference with Prospective Relationships | **NO ACTION** **PENDING** | **NO ACTION** **PENDING** | **PDTW** **TWH** | **Kring & Chung** **Schnider** **Greenberg** |
| Intentional Interference with Prospective Economic Relationships | **NO ACTION** **PENDING** | **NO ACTION** **PENDING** | **PDTW** **TWH** | **Kring & Chung** **Schnider** **Hanna, Park, Lee, Kou, and Greenberg** |

| | | | | |
|---|---|---|---|---|
| Fraud [Agreement to Prepare 2015 Ta Returns for PDT | | **NO ACTION PENDING** | **PDTW** | **Foster, Ko, KF Pro., Thomas Wylde, Park, Hanna, Rafols, Bae, Schnider, Nolan Heimann, Kyu Hong Kim, CPA, Kyu Hong Kim, Allison, Kim** |
| Fraud on | **NO ACTION** | **NO ACTION** | **PDTW** | **Foster,** |

| | | | | |
|---|---|---|---|---|
| $1,782,000 alleged Advance on 2014 tax return for PDTW | **PENDING** | **PENDING** | | **Ko, KF Pro., TW Defens. (Park, Hanna, Yoonsung Bae, Thomas Wylde, Schnider, Nolan Heimann, Kyu Hong Kim, CPA, Inc. Kyu, Kim, A. Kim Lee** |
| Fraud by Concealment | **NO ACTION PENDING** | **NO ACTION PENDING** | **Paula Thomas** | **Defens.,** |

| | | | | |
|---|---|---|---|---|
| (Insurance Fraud) | | | | Kou Defens., Schnider Defendants, John Hanna, Thomas Wylde, |
| Negligence | PAULA THOMAS | SCHNIDER, PEDDIE, KRING & Chung, KF Professionals Norman Ko, Joseph Foster, Kyu Hong Kim Kyu Hong Kim, CPA, Inc., Jene Park, | PDTW | Foster, Ko, KF Prof. Thomas Wylde, Jene Park, John Hanna, Rafols Bae, Schnider, Nolan |

| | | | |
|---|---|---|---|
| | **John Hanna, Meldy Rafols, Yoonsung Bae** | | **Heimann, Kyu Hong Kim, CPA, K. Kim, A. Kim** |
| Breach of Fiduciary Duty | | **PDTW** | **Park** |
| Unfair, Illegal and Fraudulent Busi Practices | | **PDTW** **TWH** | **Park, Lee, Schnider Hanna, Kou, Schnider Defend.** |
| Declaratory Relief Agreement to Purchase Membership Int | | **PDTW** **TWH** | **Park, Lee, Kou Hanna** |

**PLAINTIFF PDTW, LLC AND PAULA THOMAS' NOTICE OF MOTION FOR CRIMINAL CONTEMPT - 71**

| | | | | |
|---|---|---|---|---|
| Injunctive Relief (Order prohibiting Jene Park from Selling clothes) | | | **PDTW** | **Park, Lee, Kou Hanna** |
| **1st COA:** Intentional Reckless Incomp. | **PAULA THOMAS** | **GREENBERG** | | |
| **5th COA:** Abuse of Process | **PAULA THOMAS** | **Schnider, Peddie, Jene Park, Meldy Rafols, Yoonsung Bae, John Hanna** | | |
| **6th COA:** Fraud by Concealment | **PAULA THOMAS** | **Schnider, and Greenberg Defendants** | | |

| | | |
|---|---|---|
| (Hillshore Investment was a Dummy Compa | | |
| **7th COA:** Fraud regarding the July 18, 2014 e-mail | **PAULA THOMAS** | Schnider, Greenberg |
| **9th COA:** Defamation Per Quod | **PALUA THOMAS** | Schnider, Park, Hanna |
| **10th COA:** Intentional Interference with July 18, 2014 Contract | **PAULA THOMAS** | Schnider, Peddie, John Hanna, Jene Park |
| **11th COA:** | **TW HOLDINGS** | Schnider, Peddie, |

| | | | |
|---|---|---|---|
| Intentional Interference with Prospective Economic Relationships Between TWH and PDTW | | **Hanna, Park, Greenberg** | |
| **12ᵗʰ COA:** Negligent Interference with Prospective Economic Relationships Between TWH and PDTW | **TWH, LLC** | **Schnider, Peddie, Hanna, Park, and Greenberg** | |
| **13ᵗʰ COA:** | **PAULA THOMAS** | **Greenberg** | |

32.     Plaintiff asked Defendants for dates to take depositions and to start the Rule 26(f) Conference under the Standing Order, but they did not respond.  The suggestion that Plaintiffs just set dates for deposition is not true.  Plaintiffs are working with the Insurance Plus Defendants to get documents and have provided them with a 30 days extension in return for documents.  None of the other defendant were willing to provide documents.  Attached as Exhibit "1" to this pleading are the three emails I prepared and sent to counsel requesting Rule 26(f) and depositions under the Court's Standing Order.  Exhibit "2" is the Exhibit List for the exhibits referred to in the Declaration of Biller in support of the Motion for Criminal Contempt, Motion for Preliminary Injunction, and Motion to Strike Motion to Stay.

33.     I, Dimitrios P. Biller, declare under penalty of perjury that the forgoing is true and correct.  Executed in Pacific Palisades, California on June 13, 2020.

By: /S/ Dimitrios P. Biller

## MEMORANDUM OF POINTS & AUTHORITIES

## I.

## INTRODUCTION

First and foremost, Richard Peddie cannot represent Thomas Wylde, LLC because (1) Paula Thomas is the majority of owners of units, (2) Hillshore Investment, S.A. does not exist and (3) Peddie represents outsider and non-owner Stephen Choi whose interests are clearly adverse to the interests of Thomas Wylde, LLC.  This latest filing is just another misrepresentation to the District Court that Richard Peddie is authorized to represent Thomas Wylde, LLC. HE IS NOT.  He is violation numerous *Rules of Professional Conduct* and *Rule 11 of the Federal Rules of Civil Procedure* by making that false representation.  Before this Honorable Court considers any motion or ex parte application filed by Richard Peddie for Thomas Wylde, LLC Plaintiff request that the Court issue an Order to Show Cause by admissible evidence Peddie has authority from Thomas Wylde, LLC to making filings on its behalf.

Next, Motion to Stay and *Ex Parte Application* for Protective Order and/or Stay Discovery or in the alternative a Status Conference, joined by almost all Defendants, are shams.  The Declaration of Dimitrios P. Biller supra has set forth substantial facts proving that the Orange County Court cannot save Defendants in

this case.  Richard Peddie's "Chart" is a fraud by concealment because he intentionally omitted highly relevant information.  Plaintiffs' charts include all the relevant information to provide there are not overlapping issues between this case and the Orange County case.  Apparently, Defendants prefer to have Judge Claster to issue rulings first?

There are two ex parte applications seeking the same relief.  However, neither discusses any facts presented through admissible evidence that "*extraordinary circumstances*" exist or there is an "*emergency*."  The *ex parte applications* do not even mention the standard to prevail on an *ex parte*. Defendants have formed their own procedures to obtain *ex parte* relief that are NOT recognized by the *Federal Rules of Civil Procedure*, *Local Rules for the Central District*, and Judge Kronstadt's *Standing Order*.  Therefore, Defendants have filed and joined in the filing of a pleading the violated *Rule 11 of the Federal Rules of Civil Procedure.*

Why? Defendants are terrified of the evidence Plaintiffs has and what their clients will stay when confronted with impeachment evidence.  The Defendants have concealed so much evidence it is unconscionable.  The Declarations of Biller and Paula Thomas in support of the Motion for Criminal Contempt has displayed that evidence; those declarations prove a pattern and practice of deceit, fraud,

concealment and fabrication of evidence.  Defendants now attempt to conceal evidence through the ex parte application process.

## II.

## STATEMENT OF FACTS

For purposes of this Opposition, Plaintiffs present a brief Statement of Facts on the issue that Hillshore Investment, S.A. is a dummy and Richard Peddie will fabricate evidence to attempt to prove otherwise.

Stephen Choi stole the IP through the December 1, 2014 fraudulent promissory for $2 million signed by Eniluz Gonzalez and Shoeb Ahmed (wife and friend/business partner of Stephen Choi).  **(Exhibits "15", "16",”20", "50", "44", and "73")** Gonzalez was never the "President" or "General Manager" of "Hillshore Investment, S.A." **(Exhibits "49", "53" and "54")**  Richard Peddie is part of the conspiracy to fabricate the misrepresentation that Hillshore Investment, S.A. actually exists.  **(Decl. of Biller)** Richard Peddie fabricated the September 28, 2015 letter from "Eniluz Gonzalez" to David Schnider related to the purchase of 3,300 units and Peddie deleted any reference to DESNA Investment, LLC and its purchase of the 3,000.  **(Exhibit "127")** However, Choi admitted to Schnider on September 28, 2015 in a separate e-mail that Hillshore Investment, LLC is going defunct and DESNA Investment, LLC is making the purchase.  **(Exhibit "75")**

**From:** David Schnider <david@thomaswylde.com>

**Sent:** Wednesday, September 30, 2015 7:00 AM

**To:** Stephen Choi

**Cc:** Doug Lee; John Hanna

David Schnider <david@thomaswylde.com>

**Subject:** Re: Exercise of Option

Yes

Sent from my iPad

**On Sep 30, 2015, at 6:30 AM, Stephen Choi**

**<stephen@choisite.com> wrote**:

**I can change to Hillshore .. just this company is going to be**

**defunct** soon .. so can we transfer all shares to Desna in the future?

**(Exhibit "76")**

     As stated in the Decl. of Biller, DESNA Investment, LLC paid the

$3,521,000.00 but never became a member and never received any units.  Richard

Peddie fabricated letter proves he manufactured it because he put it on the Index of

Documents he produced.  **(Exhibit "67", LDT2507, bates stamp 3093105)**

**III.**

**ARGUMENT**

## A. District Court Has Inherent Power To Not Allow Richard Peddie to Represent Thomas Wylde, LLC Or To Consider Any Pleadings He Files for Thomas Wylde, LLC

Plaintiffs respectfully requests that the United States District Court use its inherent power stop Richard Peddie from representing Thomas Wylde, LLC – a business that Paula Thomas owns.  It has been very difficult to collect the evidence that proves this conclusion without any doubt because Peddie has committed some of the most egregious crimes that can be committed in our judicial system.  One of the most outrageous criminal acts that Peddie committed was the *fabrications of the September 28, 2015 letter* that Peddie clearly fabricated to create the false impress that Eniluz Gonzalez was the President and General Manager of "Hillshore Investment, S.A."  Richard Peddie caused this letter to be *produced in discovery*. This crime violates *Penal Code §§118(a) [perjury by affidavit], 127[subrogation of perjury], 129 [false return under oath], 132 [offer false evidence], 134 [preparing false evidence], 135 [destroying, erasing, or concealing evidence, 182 [conspiracy to violate these crimes].*

The production of that fabricated letter caused an enormous loss of time and delay because it caused doubt as to whether Hillshore Investment, S.A. was a

dummy. However, Doug Lee produced his copy on November 2, 2018 and those doubts were wiped clean.

A lawyer cannot simply walk into court claiming he represents a specific party in active litigation [Thomas Wylde, LLC] when he is representing the adversary of that party [Stephen Choi]. That is called fraud on the Court. How can proper justice be rendered when an impersonator is allowed to speak for a party he does not represent? When that impersonator is representing the party's adversary, he will use and abuse the system of justice to harm the party he should not speak for. The impersonator will file motions to harm the innocent party and take actions that are inconsistent with that party's legal rights (destroy evidence, fabricate evidence, conceal evidence, commit perjury and subrogation of perjury, fabricate allegations).

Plaintiffs did not file a Motion for Criminal Contempt against Richard Peddie and his two minions (Park and Schnider) because they j-walked across the street before going into court. That Motion is supported by over 700 pages of declarations and 187 exhibits. Peddie has violated federal and state criminal statues, some before this Court; **Exhibits "90", "91" and "92"** are three declarations that Peddie prepared for his, Park and Schnider's signatures [subrogation of perjury, perjury, conspiracy]. Those declarations contain 26 false

statements.  **(Decl. of Biller, 253:8-339:19, Exhibits "90", "91" and "92").** That

is equal to 78 counts of violations of *Penal Code §§118(a), 127, and 182.*  David

Schnider is an Attorney!

How about the fraudulent Claim No. 9 for $2.4 million Peddie signed under

penalty of perjury that he had personal knowledge of the debt.  He did not attach a

contract entered into by PDTW, LLC and Thomas Wylde, LLC.  He did not give

proof that there was a "supermajority" vote approve Thomas Wylde, LLC taking

on that alleged debt.  There is no evidence that Thomas Wylde, LLC complied

with the Amended Restated Operating Agreement demanding members vote and a

supermajority vote be cast.  **(Decl. of Biller)**

7.3.  **Acts Requiring Member Vote**. Except as otherwise provided in

this Agreement or by the Act, all of the following acts shall require

the consent by Vote of a Supermajority of Members:

**(g) The incurring of any contractual obligation or the making of**

**any capital expenditure with a total cost of more than $500,000;**

**(l) Instituting, settling, or compromising of any claim or litigation**

**for more than $100,000;**

Richard Peddie has never produced a Notice of Proposal Action and Notice

of Approval by a supermajority to allegedly pay for PTDTW, LLC 2014 and 2015

expenses or to initiate the Cross-Complaint in Superior Court and the Counterclaim in the Adversary proceedings.  Richard Peddie has been so arrogant, reckless and cavalier about the actual facts, he did not care about learning them; he just fabricated them.  There is no evidence from Thomas Wylde, LLC that Thomas Wylde, LLC agreed to pay for the $4.4 expenses that PDTW, LLC alleged incurred in 2014 and 2015.  Such a debt required a supermajority vote; the alleged debt was incurred when "Hillshore Investment, LLC" was not even a member!

The Rule of Law is being dismantled piece by piece in major cities throughout the country.  It cannot be wiped out in the Halls of Justice.  The Courts of the United States are the last beacon of protection as the Framers of the United States Constitution wanted from those who step on and violate the Rules of Law like Richard Peddie has done for three years.

**B. Richard Peddie Is Repeatedly Violating Numerous *Rules of Professional Conduct***

The *Rules of Professional Conduct* prohibit Richard Peddie from representing Thomas Wylde, LLC.  He represents Stephen Choi and Stephen Choi is simply a man who money laundered $18.3 million between 2014 and 2017 through his dummy corporations.  **(Exhibit "16", "48", "80", and "109")**

Rule 1.7 Conflict of Interest

(a)  A lawyer shall not, <u>without informed written consent from each client and compliance with paragraph (d)</u>, represent a client if the representation is directly adverse to another client in the same or a separate matter.

Richard Peddie did not obtain informed consent from the majority holder of Thomas Wylde, LLC – Paula Thomas.  Any legal maneuver Richard Peddie makes is for the benefit of Stephen Choi, not Thomas Wylde.  Every time Peddie files a pleading stating he and his firm represent Thomas Wylde, LLC, he is making another misrepresentation to the Court.  He is violating *Rule 3.3 of the Rules of Professional Conduct*:

(a) A Lawyer Shall Not:

(1) **<u>knowingly make a false statement of fact</u>** or law to a tribunal or **<u>fail to correct a false statement of material fact</u>** or law previously made to the tribunal by the lawyer; (Emphasis added)

It is unheard of for a lawyer claiming to represent a litigant in Court before a Judge [Thomas Wylde, LLC] but actual represent the litigant's adversary. That situation involves the unlawful conveyance of confidential information from Thomas Wylde, LLC belonging to Thomas Wylde, LLC to Richard Peddie and

Stephen Choi.  This is a direct violation of *Rule 1.6 of the Rules of Professional Conduct*:

> **(a)**  A lawyer shall not reveal information protected from disclosure by <u>Business and Professions Code section 6068</u>, subdivision (e)(1) unless the client gives informed consent, or the disclosure is permitted by paragraph (b) of this rule.

**Exhibit "65"** is a perfect example how Peddie shared the confidential information belonging to Thomas Wylde, LLC to Stephen Choi.  Peddie has also violated the Rule prohibiting counsel from violating the law or assisting his client to violate the law.  *Rule 1.2.1 of the Rules of Professional Conduct* states:

> **(a)  A lawyer shall not counsel a client to engage or assist a client in conduct that the lawyer knows is criminal, fraudulent, or a violation of any law, rule, or ruling of a tribunal**.  (Emphasis added)

Peddie clearly fabricated the September 28, 2015 letter to create the false impress that Eniluz Gonzalez was the President and General Manager of "Hillshore Investment, S.A."  This is a horrific crime that violates numerous *Penal Code §§118(a) [perjury by affidavit], 127[subrogation of perjury], 129 [false return under oath], 132 [offer false evidence], 134*

*[preparing false evidence], 135 [destroying, erasing, or concealing evidence, 182 [conspiracy to violate these crimes].*

The production of that fabricate letter caused an enormous loss of time and delay because it caused doubt as to whether Hillshore Investment, S.A. was a dummy.  He Doug Lee produced his copy on November 2, 2018 those doubts were wiped clean.

Peddie is a wrecking ball: his Superior Court Cross-complaint contracts the allegations in wrote int eh Claim No. 9 and Counterclaim filed in the bankruptcy court.  The Motion to Stay is based on a premise that does not exist; there are not any claims in the federal case overlapping with the Orange County case.  See Decl. of Biller.  The *ex parte application* for a protective order or stay or in the alternative a Status Conference is not supported by any existing law but was purely designed to delay, delay and more delay.

Peddie has violated Rule 3.1 (meritorious claims and contentions) and Rule (delay of litigation of the Rules of Professional Conduct) of the *Rules of Professional Conduct*.  How many *Rules of Professional Conduct* and criminal acts does a lawyer have to commit in Court proceedings to be removed as counsel for a party he does NOT represent?  That is not a joke!

### C. Richard Peddie Understands the Rules in This Courtroom because He has Filed and Opposed Many *Ex Parte Application* in Accordance with those Rules and Law

When ever Richard Peddie wants to oppose an *ex parte application*, he cries "no emergency" or no "extraordinary circumstances." Plaintiffs' *ex parte applications* filed before Judge Kronstradt have been denied on that basis. But now, he turns a blind eye to the law.

Judge Kronstadt's Standing Order that Defendants have either not read or (worst) ignored. The Standing Order states the following regarding ex parte applications:

3. **Ex Parte Applications Ex parte applications are solely for extraordinary relief and should be used with discretion. See Mission Power Eng'g Co. v. Cont'l Cas. Co., 883 F. Supp. 488 (C.D. Cal. 1995).** Ex parte applications that fail to conform to Local Rule 7-19, including a statement of opposing counsel's position, will not be considered, except on a specific showing of good cause. Concurrently with service of the ex parte papers by electronic service and telephonic notice, counsel shall also serve the moving party by either facsimile, email, or personal service, and give notice to the

moving party that opposing papers must be filed no later than 24 hours (or one court day) following service. If counsel do not intend to oppose the ex parte application, counsel must inform the Courtroom Deputy Clerk by telephone or email as soon as possible.

There is no evidence of extraordinary circumstances to even consider the *ex parte applications* and joiners.  The fact Defendants did not even address the Standing Order and submit any evidence of "extraordinary circumstances" is an admission no such circumstances exist.

### D. There is No Such Device As a "*Ex Parte Application* for Protective Order and/or to Stay Discovery"

*Rule 26(b)(5)(C) of the Federal Rules of Civil Procedure* is the law that governs how to obtain protective orders.  Under that law a motion has to be filed and admissible evidence has to be submitted to meet that standard set forth in the law.

(C) Protective Orders. (1) In General. A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that

the movant has in good faith conferred or attempted to confer with

other affected parties in an effort to resolve the dispute without court

action. **The court may, for good cause, issue an order to protect a**

**party or person from annoyance, embarrassment, oppression, or**

**undue burden or expense**, . . . .

The four bases on which a Motion for Protective Order can be sought are not

even discussed in two ex parte applications for a protective order, let alone

supported by admissible evidence of "**annoyance, embarrassment, oppression,**

**or undue burden or expense."**

## E. Defendants Ignored the Requirements of a Motion for Protective Order

Defendants simply cannot go running to the Court unprepared and ask

the Court to give them something that is not properly before the Court.

Defendants have to follow the procedures set forth in the *Local Rules 37-1*

*and 37-1*.  Defendants have to request a meeting with Plaintiffs' counsel to

be held within 10 day and present the issues with discovery in a letter to

Plaintiffs' counsel.  There should be a good faith effect to resolve the

difference, if that fails the moving paper for a motion for protective order

must prepare a Joint Stipulation and allow Plaintiffs seven days to revise to

input their position, argument and attachments.  The moving party then has

to file the Joint Stipulation with the Magistrate Judge in this case. Of course,

Defendants did not follow these procedures when seeking a protective order.

### F.  The *Ex Parte Applications* Are Designed to Continue to Conceal Evidence that Has Been Concealed for Three Years

Defendants filed the two ex parte applications on June 9 and June 10, 2020

after they filed the Motion to Stay on May 20, 2020.  Prior to the *ex parte*

*applications* being filed Plaintiff sought to comply with the Standing Oder.

Plaintiff asked Defendants for dates to take depositions and to start the Rule 26(f)

Conference under the Standing Order, but they did not respond.  The suggestion

that Plaintiffs just set dates for deposition is not true.  Plaintiffs are working with

the Insurance Plus Defendants to get documents and have provided them with a 30

days extension in return for documents.  None of the other defendant were willing

to provide documents.  **Decl. of Biller, Exhibit "1" attached to this Opposition.**

### G. This is a Discovery Matter that Should Have Been Filed with the Magistrate Judge According to the Standing Order

The relief sought is a stay on discovery.  The Standing Order states:

8. Discovery:

**a. Discovery Matters Referred to Magistrate Judge All**

**discovery matters, including all discovery motions, are referred to**

**the assigned United States Magistrate Judge.** The Magistrate

Judge's initials follow the District Judge's initials next to the case

number on this Order. All discovery-related documents must include

the words "DISCOVERY MATTER" in the caption to ensure proper

routing. Counsel are directed to contact the Magistrate Judge's

Courtroom Deputy Clerk to schedule matters for hearing. Please

deliver mandatory chambers' copies of discovery-related papers to the

Magistrate Judge assigned to this case rather than to this Court.

(Emphasis added)

## H. Substantive Failures of the *Ex Parte Applications* for Protective Order and/or Stay

Plaintiff is simply complying with the Standing Order to conduct discovery

and participate in the Rule 26(f) Conference. Richard Peddie states he wants to

"bring order to these proceedings which are spiraling out of control. . . ." (1:4)

Complying with a Court Order is not "spiraling out of control."  Perhaps Richard

Peddie means he is no longer in control now that he has to oppose the Motion for

Preliminary Injunction on August 31, 20120 and a Motion for Criminal Contempt on October 26, 2020.

Richard Peddie states that Plaintiffs will not be prejudice by a stay.  (1:12-17) because Plaintiffs have assembled 60,000 pages of documents.  Thomas Wylde, LLC has produced on 10,000 pages, and is concealing evidence, computers, books & records that Thomas is entitled to review, and he/Jene Park have taken Thomas Wylde, LLC underground to an unknow place in violation of the Amended Rested Operating Agreement.  Plaintiffs are not seeking documents; Plaintiff are seeking depositions of defendants to prove Plaintiffs' case.  Peddie and David Schnider are still in violation of the Bankruptcy Court's Order; they have and are concealing evidence.  Peddie does not what Plaintiffs to take depositions because that will revealed the concealed evidence.  Peddie and Park are share confidential information belonging to Thomas Wylde, LLC with Stephen Choi **(Exhibit "65")** a direct violation of the Amended Restated Operating Agreement that results in irreparable harm that money damages are inadequate to compensate. **(Exhibit "70", Clause 10)**

Judge Claster has a policy of putting a stay on discovery for four months in every case.  He did so in the Orange Court case in early January 2020 and that stay expired in April 2020.  He did not impose a stay for another other reason.

## I. Peddie Wants To Argument the Merits of the Rule 12(b)(6) Motion

From page 4, line 1 to page 6, line 28, Peddie presents the Court with his
Rule 12(b)(6) arguments.  He and the clients he claims to represent should have
filed the entire motion instead of giving the Courts bits and pieces of arguments
that will fail.  If he was secure about hit arguments he would have done so.

### 1. Revised First Amended Complaint is Unrelated to Orange County

Plaintiffs filed this case "six days after receiving [meaningless] demurrers
because the statute of limitations was running for PDTW to secure its rights under
RICO and Copyright, not because of the demurrers. There are not any two actions
in both cases that involve the same plaintiffs and defendants over the same injuries.
***See Charts in Decl. of Biller.*** However, Richard Peddie does not want to address
that point because Plaintiffs' Chart points this point.  Richard Peddie
misrepresented to the Court in the Motion to Stay that there were overlapping
issued between the Orange Counsel case and this case.  There are no overlapping
issues and that is why Richard Peddie does not make a big deal about it in his ex
parte application.

### 2. It Is Richard Peddie Who Has File a "Myriad" of Complaints/Claims and Fraudulent Pleadings

Peddie argues that Biller has filed a "myriad" of cases elsewhere.  Peddie filed the fraudulent Claim No. 9 on January 1, 2016; Peddie filed the fraudulent Cross-complaint in the Superior Court that impeaches the Claim No. 9 putting it to be a fraud.  Peddie convinced the Trustee to file an adversary proceeding in Bankruptcy Court on September 17, 2017 to stay the Superior Court trial that was scheduled to start on October 1, 2017. Peddie filed 8 declarations for Park, Schnider and himself that contain 45 false statements of material fact.  Peddie opposed motions for disqualification and partial summary judgment by lying to Judge Yun and hiding his representation of Stephen Choi.  Peddie has abused the litigation and discovery process by filing ex parte applications for protective order and then violating the orders.  He and David Schnider worked hand and glove together.  ***See Motion for Criminal Contempt***.

### 3.  PDTW, LLC Does NOT Have a Statute of Limitation Issue

Just like the other Defendants, Peddie claims PDTW, LLC's statute of limitations was not tolled by federal law.  However, the tolling statute for companies and people in bankruptcy law is set forth in *California Code of Civil Procedure §362*:

> This Title does not extend to actions already commenced, nor to cases where the time prescribed in any existing statute for acquiring a right

or barring a remedy has fully run, but the laws now in force are

applicable to such actions and cases, and are repealed subject to the

provisions of this section.

PDTW, LLC filed for bankruptcy on June 30, 2020, so the period of time

between June 30, 2016 and the date the stay was lifted on July 23, 2019 was tolled.

It did not discover the injuries it sustained until September 2017 because Peddie

and others at Thomas Wylde, LLC, and Attorney David Schnider, were concealing

evidence.  Under the *Discovery Rule*, the statute of limitations started in September

2017 when PDTW, LLC was in bankruptcy.  PDTW, LLC still has one year to file

for any torts with a one-year statute of limitations.

### 4.  Richard Peddie Fails To Attach Any Admissible Evidence to Support His Conclusory Arguments

There is a reason why Peddie fails to cite any admissible evidence when he

presents argument; he believes his words alone can be accepted as fact.  Peddie

argues that Thomas is the only Plaintiff with a RICO Act and infringement claim

and her appearance in this case is a violation of the Order Staying this action.

(3:12-19) The facts of this case are nothing like the factual allegations in the first

case (112 pages vs. 775 pages; a few exhibits vs. 93 exhibits)  There are specific

predicate acts constituting fraud that was committed in the United States

Bankruptcy Court by Peddie from Boulder, Colorado.  He is comparing apples to bananas.

### 5. Richard Peddie's Superficial Attack on the RICO Act Claim Is NOT Due to Time Limitations, but Due to a Lack of Legitimate Arguments

Peddie filed with this Court a Rule 12(b)(6) Motion and Motion to Strike without permission of the Court, so those motions are prepared; the motions were 86 pages and Peddie belatedly requested a page limitation.  Therefore, there was not time limitation as he claims to the Court.  Peddie argues that the Plaintiffs have not plead an enterprise as required by the RICO Act, and merely allege a conspiracy.  **(3:24-4:5)** Once again he fails to cite any evidence to support this misrepresentation to the court.  There are 64 pages in the Revised 1st Amended Complaint set forth in the Introduction **(6:72)** explain the Choi-in-fact-Enterprise, the distinction between that enterprise and Stephen Choi, the scheme, the pattern of racketeering, the associates/member and the separate group of co-conspirators, and specific RICO Act predicate statute violations.*2*

---

2 *18 U.S.C. §152(1) through (9)* (Bankruptcy Fraud and False Statements); *18 U.S.C. §1341,* (Mail Fraud); *18 U.S.C. §1956* (Laundering of Monetary instruments); *18 U.S.C §1152* (Interstate and foreign travel or transportation in aid

### 6.  PDTW, LLC's Injuries Were NOT Downstream, but Immediately, and Tax Returns That Are Inconsistent with Banking Records are NOT Conclusory

The Choi-in-fact-Enterprise stole the IP through the December 1, 2014 $2 million promissory note before Thomas gave up ownership through the Agreement to Purchase, but PDTW continued to be the exclusive licensing of the IP.  Every piece of clothing that Thomas Wylde, LLC, Jene Park and Richard Peddie sold infringed on PDTW, LLC's copyright and trademark protections.  There is also the $2.4 million that the Choi-in-fact-Enterprise stole from PDTW in 2014 and 2015.

It is laughable to state that the allegations of tax evasion are conclusory. Chapter 8 of the 1ˢᵗ Revised Amended Complaint is riddled with specific a factual allegation regarding the tax evasion scheme that was a pattern of racketeering for the Choi-in-fact-Enterprise.  The allegations are very specific!

---

of racketeering enterprising); *18 U.S.C. §1957* (Engaging in monetary transactions in property derived from specified unlawful activity); *18 U.S.C. §1341* (Frauds and swindles [Wire Fraud]); *18 U.S.C. §2314* (Transportation of Stolen Goods used in counterfeiting); *18 U.S.C §2315* (Sale/receipt of stolen goods); *18 U.S.C §2318* (Trafficking in counterfeit labels); *18 U.S.C §2320* (Trafficking in counterfeit goods/services);*18 U.S.C § 7201* (Attempt to evade or defeat tax);*18 U.S.C §7206* (Fraud and False statements).

Peddie's argument that PDTW, LLC and Thomas Wylde, LLC were not in commercial competition, PDTW, LLC does not have standing for a claim based on *Business & Professions Code §17200* is meritless.  PDTW, LLC is the exclusive licensee of the copyright and trademark, so it has exclusive rights to use that property.  The unlawful prong of the *Business & Professions Code §17200* simply requires the violation of a law.  It could be the violation of the Copyright laws and a prima facia case for unlawful behavior is established.

## J.  Richard Peddie Makes Yet Another Misrepresentation of Law and Fact

He argues that the Los Angeles County case has put to rest the claims in the Orange Court cast, and July 27, 2020 is the date when Defendants are going to find victory.  Yet, he does not state what claims were filed in the Los Angeles County and Orange County and what plaintiff were in the Los Angele County case that are in the Orange County case seeking claims for injuries that what Defendants caused. Defendants throw around concepts like "res judicata" and "collateral estoppel" without knowing how or not willing to conduct a primary rights analysis.

The fact of the matter is that PDTW, LLC did not become a Plaintiff for the first time until the Orange County Case was filed on December 2, 2019.  PDTW, LLC was averse to Paula Thomas while in bankruptcy and Paula Thomas did not

have any control over PDTW, LLC at that time – the Trustee controlled the company.  They were adversaries when the Trustee filed an adversary complaint against Thomas Paula.

### K. Defendants Are Engaged in Unnecessary Delay Tactics to Prevent Plaintiff from Getting Her Day In Court

In March 2018, Paula Thomas served discovery on the Trustee, Thomas Wylde, LLC and David Schnider.  They filed 10 emergency ex parte applications for protective order, ex parte applications for protective order, motions for protective order, joiner to those pleadings and summary judgment.  Judge Yun essentially denied those motions, but it took one year or more to obtain some of the documents and depositions. Richard Peddie and David Schnider violated the Court's Order.  This situation is a repeat of what happened two years ago.  How many motions for protective order are Plaintiffs going to face before collecting its discovery?  **(Decl. of Biller)**

In support of David Schnider's motion for protective order, Schnider's attorney (Robert Silver) declared under penalty of perjury that the discovery at issue was previously served twice and Schnider produced 2,000 documents.  Judge Yun issued the Order to produce, and Schnider produced 7,500 pages and a

"Privilege Log" referring to 2,140 pages.  Counsel for Plaintiff had a stenograph report attend the meet and confer.  Robert Silver stated:

> MR. BILLER: Number 16 is Choi. You're telling
>
> 3 me he doesn't have any information on Choi?
>
> 4 **MR. SILVER: No. There are -- no, I'm saying**
>
> 5 **there are some E-mails with attachments, all his**
>
> 6 **pre-membership stuff; so, pre-March 2015. To the**
>
> 7 **extent there are those communications, they're being**
>
> 8 **produced**; and to the extent there are attachments,
>
> 9 they're produced.

There are 82 e-mails from Choi that were NOT produced!  **(Decl. of Biller)**

## IV.

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court issue an Order denying all ex pare applications for Protective Order or Stay. Furthermore, Plaintiffs respectfully request that Richard Peddie not be allowed to represent himself as the attorney for Thomas Wylde, LLC.

Dated: June 12, 2020                                      Respectfully submitted,

By: /S/ Dimitrios P. Biller

**PROOF OF SERVICE**
**STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

I declare under penalty of perjury that I live in the County of Los Angeles, state of California, I am over the age of 18 years; my business is located at 15113 West Sunset Blvd., Suite "9", Pacific Palisades, CA 90272.  On **June 14, 2020**, I caused to be served, via e-mail, the following pleadings:

PLAINTIFFS' OPPOSITION TO THE EX PARTE APPLIATION
FOR PROTECTIVE ORDER RICHARD PEDDIE FILED;
DECLARATION OF DIMITRIOS P. BILLER

on the interested parties in this action by e-mail:

Robert Silver
Kaufman Dolowich Voluck LLP
11755 Wilshire Blvd., Suite 2400
Los Angeles, CA 90025
(310) 775-6511
rsilver@kdvlaw.com

Defendants David Schnider,
Law Office of David Schnider, a
Nolan Heimann, LLP,

J. Andrew Wright
Chapman Glucksman Dean
Roeb Barger, APC
11900 W. Olympic Blvd., Suite 800
Los Angeles, CA 90064
(310) 207-7722
awright@egdrblaw.com

Defendants KF Professionals,
Inc.
Norman Ko,
Joseph Foster

Michael B. Wilk
Lewis Brisbois

Defendants Kyu Hong Kim,
CPA, Inc.,

633 West 5th Street
Suite 4000
Los Angeles, CA 90071

Kyu Hong Kim
Allison Kim


Richard Peddie
Law Studios/Richard Byron Peddie
5051 Euclid Ave.
Boulder, Colorado 80303

Richard Peddie


Richard Peddie
Law Studios/Richard Byron Peddie
5051 Euclid Ave.
Boulder, Colorado 80303

Stephon Choi
Eniluz Gonzalez
Doug Lee
Roger Kou
Jene Park
John Hanna


A James Artiano
Artiano & Associates
3828 Carson Street, Suite 102
Torrance, CA  90503

James Ballas
A James Artiano
Ballas and Associates;
Desna Investment, LLC


Nemecek-Cole
Vikram Sohal
Attorney at Law
16255 Ventura Blvd., Ste. 300, Encino, CA 91436

Misty Isaacson
Pagter & Perry Isaacson


Richard Peddie
Law Studios/Richard Byron Peddie
5051 Euclid Ave.

Jene Park
Steve Prestemon
PALLATIVE

Boulder, Colorado 80303                    Thomas Wylde, LLC


Jene Park                                  Jene Park
Steve Prestemon                            Steve Prestemon
PALLATIVE, LLC                             PALLATIVE, LLC
12114 Dewey Street
Los Angeles, CA 90066


_____BY MAIL – I placed such envelope for deposit in the U.S. Mail for service by the United States Postal service, with postage thereon fully prepaid.  I am "readily familiar" with the practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Pacific Palisades, California.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

_____BY FEDERAL EXPRESS – I am familiar with the practice at my place of business for collection and processing of correspondence for overnight delivery maintained by Federal Express.  Such correspondence will be deposited with a facility regularly maintained by Federal Express for receipt on the same day in the ordinary course of business.  The envelope was sealed and placed for collection and delivery by Federal Express with delivery fees paid or provided for in accordance with ordinary business practices.

_____BY PERSONAL SERVICE – I caused such envelope to be delivered by hand to the offices of the addressee.

**XXX**: E-Mail via EM-ECF

**XXX** (State) I declare **under penalty of perjury under the laws of the State of California** that the foregoing is true and correct.


Executed on **June 14, 2020**, at Pacific Palisades, California.

**PLAINTIFF PDTW, LLC AND PAULA THOMAS' NOTICE OF MOTION FOR CRIMINAL CONTEMPT - 103**

/S/ Dimitrios P. Biller
Dimitrios P. Biller