**Exhibit A**

QATAR INTERNATIONAL COURT
AND DISPUTE RESOLUTION CENTRE

In the name of His Highness Sheikh Tamim bin Hamad al Thani,

Emir of the State of Qatar

Neutral Citation: [2020] QIC (F) 2

IN THE CIVIL AND COMMERCIAL COURT

OF THE QATAR FINANCIAL CENTRE

FIRST INSTANCE CIRCUIT

17 March 2020

**Case Nos: 6 and 7 of 2018**

(1) MS ILEANA MERCEDES D'LACOSTE AGUDELO

(2) MS ENILUZ JHOANA GONZALEZ APONTE

**Claimants**

and

(1) HORIZON CRESCENT WEALTH LLC

(2) PATRICK BAERISWYL

(3) JEAN MARC MANTEGANI

**Defendants**

and

QATAR FINANCIAL CENTRE REGULATORY AUTHORITY

**Interested Party**

---

**JUDGMENT**

---

**Members of the Court:**
Justice Frances Kirkham
Justice William Blair
Justice Rashid Al Anezi

# JUDGMENT

1. This judgment concerns the Claimants' renewed applications for summary judgment on the Defendants' counterclaims and to strike out those counterclaims.

2. These cases are concerned with claims by the Claimants, namely Ms D'Lacoste Agudelo (Case No. 6) and Ms Gonzales Aponte (Case No. 7). The business of the First Defendant, Horizon Crescent Wealth LLC (HCW) included the administration of trust funds. The Claimants bring their claims on the basis that they are each a beneficiary of a trust operated by HCW as trustee for each Claimant. Their claims against the Second and Third Defendants are brought on the basis that these were, at material times, directors of HCW. The Claimants contend that HCW were in breach of their duties as trustees, that each of the Second and Third Defendants owed duties to each of the Claimants, and that they were in breach of those duties.

3. In each of the two cases, the Defendants denied liability to the Claimants and made counterclaims against them. In each case, the Defendants allege that suspicions regarding the origin of monies received from the Claimants resulted in loss to the Defendants. In their Defence and Counterclaim in each case the Defendants say:

> "The Defendants suffered a tremendous damage because of the suspicious [sic] of the origin of the money received from [both Claimants].
> This suspicion was investigated by the investigator of QFCRA accusing [the Claimants] of money laundering which caused
> - to freeze the business of [HCW]
> - damage financially the Second Defendant.... with tremendous losses to his business and reputation
> - The third defendant has been suffering from some serious illness during and after the travel ban and was under medical array between 15 May 2018 and the 30 September 2018 and resigned from [HCW.]All these because there was a suspicion of the Money Laundering by [HCW].

*Therefore [the Defendants] claim from the ... Claimant the following:*

- *Amount of QAR 200,000,000 for [HCW] as material and moral damages happened to it because of the freeze of the money and the account, and accusation of money laundering.*
- *Amount of QAR 50,000,000 for the Second Defendant as material and moral damages.*
- *Amount of QAR 30,000,000 for the Third Defendant as material and moral damages."*

4. On 27 June 2019 the Claimants applied for orders striking out the counterclaims and/or summary judgment on those counterclaims, pursuant to Articles 23.1 and 22.6 of the Court's Regulations and Procedural Rules.

5. At a hearing on 31 July 2019 the Court considered various issues including the Claimants' applications. In its judgment dated 2 October the Court stated:

Paragraph 47: *"The Court concludes that the Claimants' criticisms of the counterclaims, which in their present state are mere assertions, are fully justified. If they wish to pursue them, the Defendants must explain the legal and factual basis of their claims, including the nature of the duty which they say the Claimants owed to the Defendants and how that duty has been breached and the actual damages they claim to have suffered because of any breaches by the Claimants. The damages which the Defendants seek are extraordinarily high and must be explained."*

Paragraph 49: *"In all of the circumstances of these two cases the Court concludes that it would be fair to give the Defendants an opportunity to provide a proper explanation of their counterclaims...and evidence to support the counterclaims. Accordingly, the Court adjourns generally the Claimants' applications to strike out the counterclaims, with permission to restore the applications if the counterclaims are left in their present wholly unsatisfactory state. The above applies equally to the Claimants' applications for summary judgment on the counterclaims."*

6. By its order dated 2 October 2019 the Court ordered that the Claimants' applications to strike out the Defendants' counterclaims be adjourned and gave the Claimants permission to reapply.

7. By letter dated 13 January 2020 the Claimants ask the Court to restore the applications to strike out the counterclaims. They say that, although several months have passed since the date of the judgment, the Defendants have failed to provide them with further explanation of the counterclaims or any evidence to support these.

8. The Defendants were notified of the Claimant's renewed applications and invited to respond by no later than 27 February 2020, but have not made any response.

9. Article 22.6 permits the Court, if it considers that justice so requires, to give summary judgment on a claim or defence or on any issue.

10. As set out above, the Court made it clear in its judgment that the Defendants must identify the factual and legal basis for their counterclaims; they must explain the nature of the duty which they say the Claimants owed to the Defendants, how that duty is said to have been breached, and the loss which the Defendants say they have suffered as a result of any breaches. Since the date of the judgment, the Defendants have not provided any of that detail or identified any evidence on which they rely in support of their counterclaims. They have not suggested any practical difficulty in providing the necessary information nor have they sought more time.

11. The Defendants have had clear warning of the deficiencies in their counterclaims and sufficient opportunity to provide a proper explanation of the legal and factual bases of their counterclaims and the losses purportedly suffered. The counterclaims do not amount to legally recognisable claims. The Defendants have still not identified any relevant legal duty owed by either Claimant to any of the Defendants. They have not explained what their losses are said to be or how any losses result from any breach of duty on the part of the Claimants.

12. The Court concluded that the applications may be determined on the basis of written submissions and without a hearing.

13. In all the circumstances justice requires that these counterclaims should not remain outstanding against either Claimant. In each of the two cases, the counterclaims of each of the three Defendants must be struck out forthwith and judgment entered for the Claimants on the Defendants' counterclaims.

14. There is no reason to depart from the normal rule that an unsuccessful party should pay a successful party's costs. Accordingly, the Court orders the Defendants in each of the two cases to pay the Claimant in each case her costs of and relating to dealing with the Defendants' counterclaims, such costs to be determined by the Registrar if not agreed.

By the Court,

*[signature]*

Justice Frances Kirkham

